Greg GUILLAUME, Appellant

v.

CITY OF GREENVILLE,
Texas, Appellee.

No. 05–06–01282–CV.

Court of Appeals of Texas,
Dallas.

March 6, 2008.

Matthew D. Hill, Law Firm of Matthew D. Hill, P.C., Dallas, TX, for Appellant.

Darrell G. Noga, Elizabeth Flora, Fee, Smith, Sharp, Vitullo, LLP, Wes Black, Dallas, TX, for Appellee.

Before Justices MOSELEY, FITZGERALD, and MAZZANT.

## OPINION

Opinion by Justice FITZGERALD.

Appellant Greg Guillaume sued his former employer, the City of Greenville, alleging that the City fired him in violation of the Texas Whistleblower Act and in violation of his rights under the First Amendment to the United States Constitution. He appeals a take-nothing summary judgment rendered against him. We affirm the dismissal of Guillaume's Whistleblower Act claim but reverse the dismissal of his First Amendment claim.

## I. Background

### A. Facts

The summary-judgment evidence, viewed in the light most favorable to Guillaume, shows the following. He was employed by the City of Greenville as its director of administrative services, a position also known as finance director. One of his primary job duties was to assist the city manager in the preparation of the City's budget. The City's charter requires the city manager to submit the budget to the city council every year for its approval and adoption.

On August 10, 2004, City Manager Karen Daly made a budget presentation to the Greenville city council. Guillaume did not receive the figures for the new proposed budget for 2004–2005 until the next day. Upon review, he believed that the proposed budget overstated revenues by $887,907 and understated expenditures by $675,000 for a total error of $1,562,907. On August 12, Guillaume sent an email to Daly and another City employee named Sherri Michael explaining these "major discrepancies." A "budget workshop" with the city council was scheduled for the morning of August 20. Early on August 19, Michael sent an email to both Daly and Guillaume asking whether she needed to change anything in the proposed budget documents before the meeting. At 9:24 that morning, Daly emailed a response to both Michael and Guillaume that stated, in pertinent part, "I don't think we need to make any changes in the budget or print any new documents. We will have more adjustments to make between the presentation and the final adoption. I plan to highlight those changes to the Council prior to their adoption of the budget." At 3:23 that afternoon, Guillaume responded to Daly's email, with a copy to Michael, that stated, in pertinent part, "My professional judgment is that the magnitude of the $1,562,907 available resources error incorporated in the proposed fiscal 04–05 budget submitted to the City Council on 8/10/04 and revealed to you in my 8/12/04 email is such that the error should be promptly disclosed to [the] City Council at tomorrow's Budget Workshop prior to any deliberations[.]" The record also contains an email that Guillaume sent someone else minutes before his email to Daly and Michael that said, "My last keg of powder has been committed to the current engagement. Victory cannot be assured. Re-

member the Alamo!" Later that same afternoon, Guillaume sent another email to a list of recipients that included Michael but not Daly that included nothing but a colorful quotation by Theodore Roosevelt to the effect that it is better to fail "while daring greatly" than never to enter "the arena" at all.

The budget workshop was held the morning of Friday, August 20, 2004. The mayor and all but one council member attended. After the mayor opened the meeting, Daly made a presentation. The minutes of the meeting state as follows: "City Manager Karen Daly stated there are some changes and corrections that are needed to be made in the proposed budget document that the Council has before them. These changes will be made and new sheets will be distributed with any changes highlighted." After that, Guillaume made a prepared statement in which he told the city council that the proposed budget overstated general fund revenues by almost $888,000 and understated water utility fund expenditures and uses by $675,000. Thus, he told the council, the budget overstated the City's potential available resources by some $1,563,000. He told the council that he had warned Daly of this fact by email, and he requested an investigation by the council as authorized by the City's charter. At the end of the meeting, after further presentations by Daly, she reiterated that changes and corrections to the budget would be forthcoming. After the meeting, Guillaume went home for lunch. By the time he returned to his office after lunch, his computer had been removed from his office. Believing he had been fired, Guillaume turned in his keys and went home. The city attorney went to his house and asked Guillaume if he had resigned. Guillaume said that he had not. Shortly thereafter, Daly called Guillaume and told him that his services would no longer be required.

## B. Procedural history

Guillaume sued the City under the Texas Whistleblower Act. The City filed a traditional and no-evidence motion for summary judgment seeking dismissal of that claim, in part for lack of evidence of proximate cause. More than seven days before the summary-judgment hearing, Guillaume amended his pleadings to add a claim that he had been fired in violation of the First Amendment to the United States Constitution. The trial court signed an order granting the City's motion for summary judgment, thereby dismissing Guillaume's Whistleblower Act claim.

The City immediately filed a "motion to dismiss with prejudice" attacking Guillaume's First Amendment claim. In that motion, the City argued that the same dearth of evidence of proximate causation that it had pointed out in its motion for summary judgment was fatal to Guillaume's First Amendment claim. A few days later, and apparently without conducting a hearing, the trial court signed an order dismissing all of Guillaume's claims with prejudice. Guillaume timely filed a motion to alter or amend the judgment. The trial court granted Guillaume's motion to the extent of signing a new final judgment in which it recited that it was granting "summary judgment" in favor of the City on both Guillaume's Whistleblower Act claim and his First Amendment claim.

Guillaume timely appealed.

## II. Standard and Scope of Review

We review summary judgments under a de novo standard. *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 51 Tex. Sup.Ct. J. 216, 221 (Dec. 14, 2007). We consider all grounds presented in the summary-judgment motion and affirm if any ground is meritorious. *Sefzik v. City of*

*McKinney,* 198 S.W.3d 884, 890 (Tex.App.-Dallas 2006, no pet.).

The trial court properly grants a no-evidence motion for summary judgment if, after adequate time for discovery, the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial and the respondent produces no summary-judgment evidence raising a genuine issue of material fact on those elements. *LMB, Ltd. v. Moreno,* 201 S.W.3d 686, 688 (Tex.2006) (per curiam). We review the evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex.2006) (applying the standards announced in *City of Keller v. Wilson,* 168 S.W.3d 802 (Tex.2005), to a no-evidence summary judgment). The scope of our review includes both the evidence presented by the movant and the evidence presented by the respondent. *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.,* 227 S.W.3d 876, 881 (Tex.App.-Dallas 2007, no pet.).

The trial court properly grants a defendant's traditional motion for summary judgment if the movant conclusively proves every element of an affirmative defense or conclusively disproves an essential element of the plaintiff's claim. *Henson v. Sw. Airlines Co.,* 180 S.W.3d 841, 843 (Tex. App.-Dallas 2005, pet. denied). Like the trial court, we must consider the evidence in the light most favorable to the nonmovant and resolve all doubts in the nonmovant's favor. *W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005).

## III. Analysis

### A. Whistleblower Act claim

The City asserted both traditional and no-evidence grounds in its summary-judgment motion. The City asserted that Guillaume could adduce no evidence (1) that his report to the city council involved a violation of law, (2) that his conduct was undertaken in good faith, or (3) that he was terminated in retaliation for his report. In its traditional grounds, the City asserted (1) that the evidence negated the element of good faith, and (2) that the evidence negated the proposition that Guillaume was terminated in retaliation for his report. Guillaume challenges the dismissal of his Whistleblower Act claim in his first, third, fifth, and sixth issues.

### 1. Elements

■ The Texas Whistleblower Act provides:

A state or local governmental entity may not suspend or terminate the employment of ... a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

TEX. GOV'T CODE ANN. § 554.002(a) (Vernon 2004). Thus, the elements of a Whistleblower Act claim are (1) that the plaintiff was a public employee, (2) that the defendant was a state agency or local government, (3) that the plaintiff reported in good faith a violation of law (4) to an appropriate law enforcement agency, and (5) that the plaintiff's report was the but-for cause of the defendant's suspending, firing, or otherwise discriminating against the plaintiff at the time the defendant took that action. *Id.; Tex. Dep't of Human Servs. v. Hinds,* 904 S.W.2d 629, 636 (Tex. 1995) (explaining the causation element). A "law" is a state or federal statute, an ordinance of a local governmental entity,

or a rule adopted under a statute or ordinance. TEX. GOV'T CODE ANN. § 554.001(1) (Vernon 2004). The City has not argued that its charter is not a "law" under the Whistleblower Act, so we will assume for purposes of this appeal that it is. *See City of Beaumont v. Bouillion*, 873 S.W.2d 425, 447 (Tex.App.-Beaumont 1993) (holding that a city charter is a "law" under the Whistleblower Act), *rev'd on other grounds*, 896 S.W.2d 143 (Tex.1995).

One of the City's summary-judgment grounds in this case is that Guillaume's report did not involve an actual violation of the City's charter because "alleged errors in a *draft* of a proposed budget are not illegal as a matter of law." In other words, the City argues that the statutory phrase "in good faith reports a violation of law" requires the plaintiff to show that the conduct he reported actually does violate the law. Guillaume's only argument in response is that the conduct he reported does in fact violate the City's charter. The only question presented as to this summary-judgment ground is whether Daly's conduct as reported actually violated the law.

### 2. Violation of law

In his fifth and sixth issues, Guillaume argues that the evidence raises a genuine issue of fact as to whether he "in good faith report[ed] a violation of law." TEX. GOV'T CODE ANN. § 554.002(a). We consider first whether the conduct he reported actually constituted a violation of law—in this case, the City's charter. This is a question of law. *Rogers v. City of Fort Worth*, 89 S.W.3d 265, 274 (Tex.App.-Fort Worth 2002, no pet.). We conclude that Daly's conduct did not violate the charter.

We must compare the content of Guillaume's report to the provisions of the charter. Guillaume reported (1) that the draft budget that Daly submitted to the

council on August 10, 2004 overstated available financial resources by $1,563,000, and (2) that he had informed Daly of the error on August 12 but she had not disclosed it to the council. The City's charter imposes significant budget-related duties on the city manager. Section 37(2) requires the city manager to "[p]repare the budget annually and submit it to the Council," and section 37(4) requires her to "[k]eep the Council advised of the financial condition and future needs of the City of Greenville." GREENVILLE, TEX., CHARTER §§ 37(2), (4) (1953). "The City Manager shall submit to the Council a proposed budget not later than the first regularly scheduled Council meeting in the August prior to the beginning of each fiscal year," *id.* § 42, which runs from October 1 through September 30, *id.* § 41. The budget shall provide a complete plan for the fiscal year, and it shall contain a summary of proposed expenditures by department, character, and object. *Id.* §§ 42(7), (8). The budget must include a table comparing projected revenues with estimated revenues for the current fiscal year and actual revenues from the last completed fiscal year. *Id.* § 43. It must include a similar table for expenditures. *Id.* § 44. Finally, the charter provides that the "[t]otal estimated expenditures of the general fund and debt service fund shall not exceed the total estimated resources of each fund (prospective income plus cash on hand)." *Id.* § 56.

We cannot agree with Guillaume that Daly's conduct violated the City's charter. He reported that Daly had failed to make specific disclosures to the council regarding discrepancies he had previously identified in a mere proposed budget, which the council was reviewing at a budget workshop. We do not read the charter so broadly as to forbid such conduct, especially in light of Daly's acknowledgment at the

workshop that "changes and corrections" needed to be made in the budget before final consideration. The charter does not expressly require that every draft budget that the city manager distributes to the council must be free from error, and we believe that reading such a requirement into the charter could only have a chilling effect on the city manager's willingness to freely share projections and information with the council. When mere draft proposed budgets and budget workshops are involved, and the city manager has openly admitted to the council that the draft budget is erroneous and will need to be changed, we cannot conclude that any provision of the charter has been violated.

We conclude that Guillaume's report did not involve conduct by Daly that violated the City's charter.

### 3. Conclusion

The trial court properly granted the City's motion for summary judgment as to Guillaume's Whistleblower Act claim because as a matter of law Guillaume's report did not involve conduct that violated the City's charter. Accordingly, we overrule Guillaume's fifth and sixth issues. We need not consider Guillaume's first and third issues, in which he argues that he raised a fact issue on the causation element of his Whistleblower Act claim. TEX. R.APP. P. 47.1.

### B. First Amendment claim

The procedural steps leading to the dismissal of Guillaume's First Amendment claim were irregular. The City never filed a motion for summary judgment addressing that claim, but instead it filed a "motion to dismiss with prejudice" two days after the trial court granted summary judgment dismissing Guillaume's Whistleblower Act claim. The only ground for dismissal asserted in that motion was Guillaume's inability to raise a fact issue

on the element of causation. The trial court at first signed an order dismissing "any and all claims" asserted by Guillaume with prejudice (without referring to the motion to dismiss). Guillaume filed a motion to alter or amend judgment in which he objected to the trial court's dismissing his First Amendment claim on any ground other than causation. He acknowledged that the causation standard was the same for both of his claims and essentially agreed that if the trial court had dismissed his Whistleblower Act claim based on the element of causation it could also grant summary judgment on his First Amendment claim for the same reasons. The trial court then entered a new order, captioned "Final Judgment," in which it granted "summary judgment" on Guillaume's First Amendment claim. We will analyze the trial court's dismissal of the First Amendment claim as though the City's motion to dismiss were a motion for summary judgment, based on the grounds stated therein and on the previously filed summary-judgment evidence, and as though Guillaume waived the ordinary notice requirements of Rule 166a.

■■■ In his second and fourth issues, Guillaume contends that the trial court erred in dismissing his First Amendment claim because he raised a genuine fact issue on the element of causation, which was the only ground asserted in the motion to dismiss. The First Amendment protects public employees against retaliation for the exercise of their free-speech rights under some circumstances. *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 1957, 164 L.Ed.2d 689 (2006). A violation of a public employee's First Amendment rights is actionable under 42 U.S.C. § 1983. *Scott v. Godwin,* 147 S.W.3d 609, 616 (Tex.App–Corpus Christi 2004, no pet.). Courts have held that the elements of a First Amendment retaliation claim

are: (1) speech by a public employee involving a matter of public concern, (2) the employee's interest in commenting on matters of public concern outweighs the employer's interest in efficiency, (3) an adverse employment action, and (4) the speech motivated the adverse employment action. *Id.; see also Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir.1999).[1] For purposes of this opinion, we need discuss only the fourth element.

■ To prove causation, the plaintiff in a First Amendment retaliation case must prove that his protected speech was a substantial or motivating factor in his employer's adverse employment decision. *Click v. Copeland*, 970 F.2d 106, 113 (5th Cir.1992). The timing of a defendant's conduct in relation to the plaintiff's speech may be circumstantial evidence of a retaliatory motive. *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir.1999). If the plaintiff meets his burden, the burden then shifts to the employer to prove that it would have taken the same action in the absence of the protected conduct. *Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007). Our supreme court has held that "the standard of causation in whistleblower *and similar cases* should be that the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did." *Hinds*, 904 S.W.2d at 636 (emphasis added). Based on the similarity between claims under the Whistleblower Act and retaliation claims under the First Amendment, we hold that the same causation standard applies to both claims.

■ The summary-judgment evidence raises a genuine fact issue as to whether Guillaume's speech was a motivating factor in Daly's decision to terminate his employment immediately on August 20, 2004. In Daly's own affidavit, she attests that on August 17, 2004, she decided to fire Guillaume and to offer him 30 days' notice of his termination. She further attests that after his speech to the city council on August 20, she "informed the Council that [she] had already made the decision to terminate Mr. Guillaume and that [she] would expedite same." Finally, in her deposition she testified that she would have fired Guillaume on August 23 if he had not made his speech to the council on August 20. Thus, the summary-judgment evidence would permit a reasonable jury to find, at a minimum, that Guillaume's speech caused Daly to fire him three days sooner than she otherwise would have, and that it potentially caused her not to offer him 30 days' notice of his termination. This raises a genuine issue of fact as to whether Guillaume's speech was such that, without it, Daly would not have fired him when she did. Accordingly, the dismissal of Guillaume's First Amendment claim was improper and must be reversed.

■ The City urges us to affirm the dismissal of Guillaume's First Amendment claim based on the holding in *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), which was decided the day before the trial court signed its first summary-judgment order and nine days before the trial court dismissed Guillaume's First Amendment claim. According to the City, *Garcetti* stands for the proposition that the First Amendment does not protect public employees from disciplinary actions as a result of state-

---

1. On issues of federal law, we are bound only by the decisions of the United States Supreme Court and the Texas Supreme Court. We may, however, look to decisions of other federal courts such as the Fifth Circuit for persuasive authority. *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex.1993).

ments they make pursuant to their official duties rather than as private citizens. The City argues that Guillaume's First Amendment claim fails as a matter of law under this test. This ground, however, was not raised in the City's motion to dismiss, which is the only vehicle in which it attacked Guillaume's First Amendment claim. The only ground the City asserted in its motion to dismiss was Guillaume's inability to prove causation. We will not affirm the dismissal based on grounds not presented to the trial court, to which Guillaume had no opportunity to respond. *See Ketter v. ESC Med. Sys., Inc.,* 169 S.W.3d 791, 800 n. 5 (Tex.App.-Dallas 2005, no pet.) (applying this rule in summary-judgment context). We express no opinion about the proper application of *Garcetti* to this case or about any aspect of Guillaume's First Amendment claim beyond our specific holding that Guillaume raised a genuine issue of material fact as to the element of causation.

We sustain Guillaume's second and fourth issues and reverse the dismissal of his First Amendment claim.

### IV. Conclusion

We affirm the trial court's dismissal of Guillaume's claim under the Texas Whistleblower Act. We reverse the trial court's dismissal of Guillaume's claim under the First Amendment and remand the case for further proceedings consistent with this opinion.