### Stephen WILSON, Appellant

v.

### DALLAS INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 05–11–00468–CV.

Court of Appeals of Texas, Dallas.

Aug. 13, 2012.

---

Stacey Cho, Robert Joseph Wiley, Justin G. Manchester, Rob Wiley, P.C., Dallas, TX, for Appellant.

Carlos G. Lopez, Dawn Kahle Doherty, Kathryn E. Long, Vincent Lopez Serafino & Jenevein, P.C., Dallas, TX, for Appellee.

Before Justices MORRIS, MOSELEY, and MYERS.

## OPINION

Opinion By MYERS.

Stephen Wilson appeals the trial court's judgment granting Dallas Independent School District's (DISD) plea to the jurisdiction and motion for summary judgment and dismissing appellant's Whistleblower Act cause of action. Appellant brings three issues asserting (1) the Texas "No Pass, No Play" rule is a law as defined by the Whistleblower Act; (2) appellant reported a violation of the law to a local governmental entity that appellant believed in good faith was authorized to regulate, enforce, investigate, or prosecute the law; and (3) there was a genuine issue of material fact concerning whether appellant suffered an adverse employment action because of his report. We affirm the trial court's judgment.

## BACKGROUND

The Whistleblower Protection Act is set forth in chapter 554 of the Texas Government Code. *See* Tex. Gov't Code Ann. § 554.001–.010 (West 2004). The Act waives the government's immunity from suit and liability against a person who alleges a violation of the Act. *Id.* § 554.0035. The Act prohibits a state or local governmental entity from taking adverse personnel action against a public em-

ployee who reports in good faith a violation of "law" by the employing governmental entity or another public employee to an "appropriate law enforcement authority." *Id.* § 554.002(a). The Act defines "law" as "(A) a state or federal statute; (B) an ordinance of a local governmental entity; or (C) a rule adopted under a statute or ordinance." *Id.* § 554.001(1).

Section 33.081(c) of the Education Code prohibits a student who has received a grade below 70 for a grade evaluation period from participating in competitions or public performances of extracurricular activities for at least three weeks. TEX. EDUC.CODE ANN. § 33.081(c), (f) (West Supp. 2012). This rule is commonly known as "no pass, no play."

Appellant was employed by DISD and taught engineering graphics at Franklin D. Roosevelt High School from 2005 to 2008. As a school teacher at a public school district, appellant was a "public employee" employed by a "local governmental entity." *See* GOV'T § 554.001(2), (4). In the 2007 to 2008 school year, a football player for the school enrolled in appellant's class. During the first six-week grading period of the school year, the student rarely attended appellant's class. Appellant spoke to the student, his father, his coaches, and other school personnel, and they agreed the student should be attending appellant's class. Appellant agreed not to fail the student for the first six-week period. Appellant gave the student a passing grade because he hoped to be able to work with the student during the second six-week period and help him. The first six-week period ended on October 5, and appellant turned in his grades—including a passing grade for the student—sometime between October 8 and 10. A couple of days later, the student came to appellant with an Add/Drop Slip, which removed the student from appellant's class and placed him in an environ-

mental science class. Appellant felt betrayed and used after having gone out on a limb for the student. Appellant filled out a grade-correction form and changed the student's grade to a failing grade of 60. By that time, the report cards had already been printed showing the student had passed appellant's class. That evening, at a parent-teacher conference, the student's mother learned appellant was changing her son's grade to a 60. She confronted appellant about the grade change, and they had a heated exchange. The student's mother complained to the principal about the grade change, and the assistant principal told appellant to change the grade back to a passing grade. Appellant refused. The next morning, the assistant principal met with appellant and again asked him to change the student's grade back to a passing grade. According to appellant's affidavit, the assistant principal "forced" appellant "to illegally change [the] grade of a student athlete to keep him eligible to play sports."

Appellant pleaded that he reported "his knowledge of illegal grade changing and illegal attendance records . . . by reporting it to school board member Dr. Lew Blackburn . . ., the area superintendent, Leslie Williams," and to DISD's Office of Professional Responsibility (OPR). After making these reports, appellant's class was eliminated from the curriculum for the next school year. Appellant also alleged he was unjustly reprimanded by the assistant principal and given a negative performance evaluation. Principals at other DISD high schools then refused to interview appellant for classes he was qualified to teach. Appellant obtained a position in another school district, but at a lower salary than he received at DISD.

## JURISDICTION

In Texas, sovereign or governmental immunity deprives a trial court of

subject-matter jurisdiction over lawsuits against the State or other governmental units unless the State consents to suit. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex.2004). Whether a court has subject-matter jurisdiction is a question of law. *Miranda,* 133 S.W.3d at 226; *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Miranda,* 133 S.W.3d at 226. If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Miranda,* 133 S.W.3d at 227. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue must be resolved by the fact finder. *Id.* at 227–28. If the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. Subject-matter jurisdiction may not be waived and may be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445 (Tex. 1993); *City of Wylie v. Taylor,* 362 S.W.3d 855, 859 (Tex.App.-Dallas 2012, no pet.).

The plaintiff bears the burden to plead facts affirmatively demonstrating governmental immunity has been waived and the court has subject-matter jurisdiction. *Taylor,* 362 S.W.3d at 860. The Whistleblower Act expressly waives the government's immunity for suits alleging a violation of the Act. Gov't § 554.0035. In an appeal from a final judgment, a party may raise the trial court's lack of subject-matter jurisdiction, including governmental immunity, for the first time on appeal. *Tex. Workers' Compensation Comm'n v. Horton,* 187 S.W.3d 282, 285 (Tex.App.-Beaumont 2006, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445 (Tex.1993)).

## WHISTLEBLOWER ACTION

Appellant's first issue concerns whether the trial court erred in determining appellant did not report a violation of law. The Whistleblower Act defines "law" as "(A) a state or federal statute; (B) an ordinance of a local governmental entity; or (C) a rule adopted under a statute or ordinance." Gov't § 554.001(1). An employee need not identify in the report the specific law he asserts was violated, but there must be some law prohibiting the complained-of conduct to give rise to the Whistleblower action. *See Llanes v. Corpus Christi Indep. Sch. Dist.,* 64 S.W.3d 638, 642 (Tex. App.-Corpus Christi 2001, pet. denied). On appeal, appellant asserts he reported a violation of Texas Education Code section 33.081(c), which is the no pass, no play rule, section 28.0241(a), which prohibits the changing of a course grade issued by a classroom teacher, and section 37.10(a) of the Penal Code, which prohibits tampering with a governmental record.

Section 33.081(c) provides that a student who receives a grade lower than 70 for a six-week grade reporting period is suspended from competitions and public performances for extracurricular activities for at least the next three weeks.[1]

---

1. The no pass, no play provisions of section 33.081 state:

(c) A student who is enrolled in a school district in this state or who participates in a

University Interscholastic League competition shall be suspended from participation in any extracurricular activity sponsored or sanctioned by the school district or the Uni-

In its plea to the jurisdiction, DISD asserted that the no pass, no play rule was not a "law" as defined by the Whistleblower Act but only a regulation of the University Interscholastic League (UIL). Appellant argued in response that the facts he reported constituted reports of violations of the no pass, no play rule and that the rule was a "law" under the Whistleblower Act because it was part of a statute. Appellant also argued his reports asserted violations of section 37.10(c)(2) of the Penal Code.[2] *See* TEX. PENAL CODE ANN. § 37.10(c)(2)(A) (West 2011). On appeal, DISD concedes that the no pass, no play rule set forth in section 33.081(c) of the Education Code is a law, but it argues that appellant's reports did not present a violation of that provision. Appellant argues on appeal that the reports presented violations of the no pass, no play rule and section 37.10(a) of the Penal Code. *See* PENAL § 37.10(a). In his reply brief, appellant argues that even if his reports did not present a violation of the no pass, no play rule, then the reports asserted a violation of section 28.0214, which prohibits the changing of grades issued by a classroom teacher. *See* EDUC. § 28.0214(a) (West 2006).

versity Interscholastic League after a grade evaluation period in which the student received a grade lower than the equivalent of 70 on a scale of 100 in any academic class other than a course described by Subsection (d–1) [honors and Advanced Placement courses]. A suspension continues for at least three school weeks and is not removed during the school year until the conditions of Subsection (d) are met. A suspension does not last beyond the end of a school year. For purposes of this subsection, "grade evaluation period" means:

(1) the six-week grade reporting period; or

(2) the first six weeks of a semester and each grade reporting period thereafter, in the case of a district with a grade reporting period longer than six weeks.

(d) Until the suspension is removed under this subsection or the school year ends, a school district shall review the grades of a student suspended under Subsection (c) at the end of each three-week period following the date on which the suspension began. At the time of a review, the suspension is removed if the student's grade in each class, other than a course described by Subsection (d–1) [certain advanced placement, international baccalaureate, honors, or dual credit courses], is equal to or greater than the equivalent of 70 on a scale of 100. The principal and each of the student's teachers shall make the determination concerning the student's grades.

. . . .

(f) A student suspended under this section may practice or rehearse with other students for an extracurricular activity but may not participate in a competition or other public performance.

(g) An appeal to the commissioner is not a contested case under Chapter 2001, Government Code, if the issues presented relate to a student's eligibility to participate in extracurricular activities, including issues related to the student's grades or the school district's grading policy as applied to the student's eligibility. The commissioner may delegate the matter for decision to a person the commissioner designates. The decision of the commissioner or the commissioner's designee in a matter governed by this subsection may not be appealed except on the grounds that the decision is arbitrary or capricious. Evidence may not be introduced on appeal other than the record of the evidence before the commissioner.

*See* TEX EDUC CODE ANN. § 33.081 (West Supp. 2012).

2. In his responses to DISD's plea to the jurisdiction and motion for summary judgment, appellant also stated the facts he reported constituted violations of section 552.351 of the Government Code, which states, "A person commits an offense if the person wilfully destroys, mutilates, removes without permission as provided by this chapter, or alters public information." TEX. GOV'T CODE ANN § 552.351(a) (West 2012). On appeal, appellant does not assert he reported a violation of that statute. Accordingly, we do not consider it.

■ We first consider whether appellant's reports presented a violation of section 33.081(c) of the Education Code, the no pass, no play rule. The record contains the following evidence of appellant's reports to authorities.[3] Appellant testified in his deposition that he reported to Lew Blackburn, a member of DISD's school board, that he "was coerced and forced to change grade levels to an athlete." Appellant told Leslie Williams, DISD's Executive Director of the Superintendent's Learning Community, on January 10, 2008 that he "was coerced into changing grade for a student athlete by [assistant principals] Mr. Jefferson and Mr. Phillips." Appellant also filed a report with OPR on January 24, 2008; however, a copy of that report is not in the record. Appellant testified he reported to the District Attorney's office by e-mail in June 2008 "about grade changing and attendance records been changed. That's basically the purpose of the report. Now the full detail of the report or—or—I cannot say. But I do know that the violation of attendance re-

port and grade changes at Roosevelt High School by the principals."[4] Appellant testified that he sent UIL an e-mail in October or November 2007 "in reference to the no pass, no play violations and grade changing.... I don't recall the details, but I do know it's in reference to the [student] not attending, the—the grade change." Appellant submitted an affidavit to OPR in February 2008 discussing the changing of the student's grade.[5] In the answers to interrogatories, appellant stated he "reported the illegal grade changing for star athletes at Roosevelt" to Dr. Blackburn. Appellant stated he "raised concerns" with Williams "about the illegal changing of student athlete grades and the illegal attendance records." According to the minutes of the meeting with Williams, appellant told Williams, "Mr. Philips and Mr. Jefferson coerced to change a grade for an athlete to make him eligible to pass (1st 6 weeks)." Appellant stated in his answers to DISD's interrogatories that he "filed an internal grievance regarding these matters" with OPR. Williams testified in his

3. DISD asserted in its plea to the jurisdiction that Blackburn, Lewis, and OPR were not appropriate law enforcement authorities as defined in the Whistleblower Act. Because we conclude appellant did not report a violation of law, we do not address whether Blackburn, Lewis and OPR were appropriate law enforcement authorities.

4. It is not clear what appellant means by changes to attendance records and "violation of attendance report." On appeal, appellant does not mention the changed or illegal attendance reports in his appellant's brief. Appellant mentions the attendance reports twice in his reply brief, first in relation to his argument that he reported a violation of Education Code section 28.0214, and then in his argument about whether he made his report to the OPR in good faith. Appellant does not explain in either brief how the changing of attendance records he alleged violated the law or how the attendance records were otherwise "illegal." As explained below, we do not reach appellant's argument about section

28.0214 because he did not identify that statute in the trial court as a law he reported violated. Furthermore, section 28.0214 concerns grade changing, not attendance reports. *See* EDUC. § 28.0214 (West 2006). We do not reach appellant's argument about whether he reported in good faith to the OPR because we conclude appellant did not report a violation of section 33.081(c) or section 37.10(c)(2) of the penal code. In his appellant's brief and reply brief, and in his responses to DISD's plea to the jurisdiction and motion for summary judgment, appellant makes clear that the conduct he reported that he believed violated a law was the coerced grade changing.

5. The copy of the affidavit in the record is heavily redacted. All references to the student's name, gender, the various grades given, his attendance or absence, and other information were obscured. Due to the redactions, it is impossible to determine from the face of the affidavit what appellant reported.

affidavit that appellant "reported that Roosevelt Assistant Principals ... had coerced him to change the grade of a student athlete so that he could pass and remain eligible to participate in extracurricular activities." According to OPR's report, appellant told Williams, Blackburn, and OPR about "coerced grade changing and preferential treatment for athletes."

A necessary element of a violation of section 33.081(c) is that a student participated in extracurricular activities when the student should have been suspended from participating due to receiving a grade below 70. Appellant's statement in his petition that appellant "reported his knowledge of illegal grade changing and illegal attendance records" does not allege he reported a violation of section 33.081(c). None of the evidence of appellant's reports asserts the student participated in football games or other competitions or public performances when he should have been suspended from extracurricular activities. OPR's report states UIL found in its investigation that the student played in football games during a time when he should have been suspended from playing due to grades, but appellant did not allege and the evidence does not show appellant included that fact in his reports.

■ Appellant asserts he presented evidence that he reported a violation of section 33.081(c), citing to his deposition. There, appellant stated he believed his reports showed a violation of the no pass, no play rule. Appellant also stated in his affidavit in support of his response to DISD's plea to the jurisdiction and motion for summary judgment that he "made a report of the coerced grade change and violation of UIL's No Pass No Play rule to OPR on January 30, 2008." However, whether appellant's reports showed a violation of law is a question of law. *Guillaume v. City of Greenville*, 247 S.W.3d 457, 462 (Tex.App.-Dallas 2008, no pet.). Appellant's statements that he reported a violation of section 33.081(c) were conclusory because the underlying facts in his testimony do not support the conclusions. *See Brown v. Brown*, 145 S.W.3d 745, 751 (Tex.App.-Dallas 2004, pet. denied). Conclusory statements are not competent evidence in a plea to the jurisdiction proceeding. *See Strother v. City of Rockwall*, 358 S.W.3d 462, 470, 472 (Tex.App.-Dallas 2012, no pet.); *see also Miranda*, 133 S.W.3d at 227–28 (standard for plea to jurisdiction "generally mirrors that of a summary judgment"); *Hovorka v. Cmty. Health Sys., Inc.*, 262 S.W.3d 503, 511 (Tex.App.-El Paso 2008, no pet.) (conclusory statements in depositions are not competent summary judgment evidence). We conclude appellant's petition did not allege a violation of section 33.081(c), and the evidence failed to raise a fact question of whether appellant reported a violation of section 33.081(c).

In his responses to DISD's plea to the jurisdiction and motion for summary judgment, appellant stated his report of the falsification of school records to avoid application of section 33.081(c) to one of the school's star athletes presented a violation of section 37.10(c)(2). Penal Code section 37.10 imposes criminal penalties on a person who tampers with a government record. Under section 37.10(c)(2), the offense is a felony if the governmental record was "a public school record, report, or assessment instrument required under Chapter 39, Education Code." Student report cards are required ·by chapter 28 of the Education Code, not chapter 39. *See* EDUC. § 28.022(a)(2), (b) (West 2006). Chapter 39 is titled "Public School System Accountability" and requires the preparation and administration of statewide student assessment instruments. Provisions of chapter 39 measure academic performance by the

statewide assessment instruments, not the course grades given by teachers. *See* EDUC. §§ 39.0242, .025, .052(b)(1), .053(c) (West Supp. 2012). Thus, the grade records, report cards, and grade-correction forms that may have been falsified in this case are not "public school record[s], report[s], or assessment instruments required under chapter 39, Education Code." We conclude appellant did not report a violation of section 37.10(c)(2) of the Penal Code.

 On appeal, appellant asserts for the first time that his reports presented violations of two other statutes. Appellant argues in his appellant's brief that he reported a violation of section 37.10(a) of the Penal Code. *See* PENAL § 37.10(a). In his reply brief, appellant asserts his reports presented violations of section 28.0214(a) of the Education Code, which prohibits the changing of an examination or course grade issued by a classroom teacher. *See* EDUC. § 28.0214(a) (West 2006). An employee is not required to identify in his report the statute, ordinance, or rule he asserts was violated. *Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 188 (Tex.App.-Dallas 2012, pet. filed); *Tex. Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842, 850 (Tex. App.-Austin 2007, pet. denied). However, at some point during the litigation, the employee-plaintiff must make that identification. The issue before us is whether an employee-appellant must have identified the law in the trial court or whether the employee-appellant may identify the law for the first time in the court of appeals.

 For the trial court to determine its own jurisdiction, the trial court must be able to identify which law the plaintiff believes was violated. That information is critical to the trial court's determination of (1) whether a law prohibited the complained-of conduct in the report, and (2) whether the report was made to an appropriate law enforcement authority. *See Mullins*, 357 S.W.3d at 188. As we stated in *Mullins*, "Because DISD asserted that [the employee] failed to report a violation of law, and the specific law violated is critical to the determination of whether the report was made to an appropriate authority, [the employee] was required to respond to DISD's assertions by identifying what law or laws he believed were violated by the conduct described in his report . . . ." *Id.* at 188–89.

 Given the critical nature of the identity of the law to the trial court's determination of its own jurisdiction and to the resolution of the plaintiff's Whistleblower claim, we conclude that when a trial court has dismissed a Whistleblower claim for want of jurisdiction because the employee failed to report a violation of a law, a plaintiff appealing that decision must have identified the law he reported was violated. A plaintiff appealing a dismissal of a Whistleblower claim for want of jurisdiction may not assert on appeal that the conduct described in the report violates a law not identified in the trial court.[6] *See* TEX.R.APP. P. 33.1(a).

In this case, DISD asked appellant in an interrogatory to identify what "specific state or federal statute, ordinance, or rule adopted under a statute or ordinance you claimed had been violated." Appellant's answer set forth many of the facts of the case, but he did not identify in his answer to the interrogatory the law or laws he asserted were violated. However, in his responses to DISD's plea to the jurisdiction and motion for summary judgment,

---

6. We do not determine in this case whether an employee-appellee may identify for the first time on appeal a law the reported conduct violates.

appellant identified the laws he believed were violated—section 33.081(c) of the Education Code and section 37.10(c)(2) of the Penal Code. Appellant did not assert in the trial court that the conduct described in his reports violated section 37.10(a) of the Penal Code or section 28.0214 of the Education Code. Accordingly, appellant has not preserved for appeal his arguments that the conduct he reported violated those statutes.

Appellant's pleadings failed to allege a violation of law of section 33.081(c) of the Education Code or section 37.10(c)(2) of the Penal Code, and the evidence presented to the trial court failed to create a fact question whether appellant reported a violation of those statutes. Accordingly, we conclude the trial court did not err in determining it lacked jurisdiction over appellant's Whistleblower action and dismissing the cause because appellant did not report a violation of law. We overrule appellant's first issue. We do not reach appellant's remaining issues. *See* TEX. R.APP. P. 47.1 (opinion must address every issue necessary to the disposition of the appeal).

We affirm the trial court's judgment.