

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00222-CV

LUBBOCK-CROSBY COUNTY COMMUNITY SUPERVISION AND CORRECTIONS DEPARTMENT, CROSBY COUNTY JUVENILE BOARD, APPELLANTS

V.

SHANE LANCE, APPELLEE

On Appeal from the 237th District Court
Lubbock County, Texas
Trial Court No. 2013-506,492, Honorable Paul Davis, Presiding

December 22, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellants, Lubbock-Crosby County Community Supervision and Corrections Department (Department) and Crosby County Juvenile Board (Board) (collectively, "appellants"), appeal the trial court's denial of their pleas to the jurisdiction that sought dismissal of the Texas Whistleblower Act cases brought by appellee, Shane Lance. We will reverse the rulings of the trial court.

Factual and Procedural Background

Since January 2011, Lance was jointly employed by the Board and the Department until he was terminated from both positions in February 2013. Prior to this employment, Lance had worked for the Child Protective Services (CPS) section of the Texas Department of Family and Protective Services for approximately four years.

On or about November 1, 2012, Vanessa Upchurch and Matilda Almarez met with Lance seeking advice and assistance regarding a CPS inquiry into a child, L.M.A., that was in the women's custody. Lance knew Upchurch because he had supervised her probation. Upchurch and Almarez met with Lance because they were concerned about the care that L.M.A.'s biological mother was providing to the child. After this meeting, Lance called Brandi Collins, his former assistant at CPS, to inform her of the concerns raised by Upchurch and Almarez regarding the care being provided to L.M.A. After this call, Lance sent Collins an e-mail reiterating his concern about the child's care. In this e-mail, Lance indicated that the child looked clean, appropriate, and healthy and that there were no visible signs of abuse.[1] Nothing in the e-mail indicated that the child was facing any imminent harm or danger.

In early January 2013, L.M.A. went missing. An Amber Alert was issued on January 8. Upon hearing the Amber Alert, Lance recognized that it covered the same child he had reported on in November. After making this connection, Lance again called Collins. According to Lance, Collins told him that a Multiple Referral staff

---

[1] In his brief, Lance cites to his awareness of historical behavioral issues that both Upchurch and Almarez possessed. However, the evidence establishes that he did not express these concerns during the phone call with Collins or in the follow-up e-mail.

directive (M-Ref) had been issued ordering a nonemergency removal of the child but that this removal had not been accomplished.[2] On January 9 and 10, Lance allegedly reported to Crosbyton Chief of Police Greg Parrott, Crosby County Sheriff Ethan Villanueva, Texas Ranger Todd Snyder, and Crosby County Attorney Mike Ward that CPS had determined that it needed to do a nonemergency removal of L.M.A. but failed to do so. Lance reported that he thought that CPS's inaction amounted to the crime of child endangerment. On or about January 10, L.M.A.'s dead body was located.

Soon after making his report to law enforcement officials, Lance contacted an attorney for CPS and told her that CPS workers were going to jail due to their mishandling of the L.M.A. case. Upon being notified that Lance was telling CPS workers that they would be going to jail, CPS Program Director Shawn Vandygriff called Lance. Vandygriff then contacted Ward and discovered that Ward had never told Lance that CPS workers would be jailed. Vandygriff then reported to Steve Henderson, the Department's Director, that Lance was threatening CPS workers that they were going to be arrested due to their involvement in this case. On January 15, Lance was suspended with pay while an investigation was conducted.

---

[2] As pointed out by the Department, rather than directing the nonemergency removal of the child, the M-Ref actually conditions any such removal on L.M.A.'s mother's willingness to comply with the recommendations of CPS. However, in a Whistleblower case, we must review whether Lance made a good faith report of a violation of law. *See* TEX. GOV'T CODE ANN. § 554.002(a); *Moreno v. Tex. A&M Univ.-Kingsville*, 339 S.W.3d 902, 907-08 (Tex. App.—Corpus Christi 2011), *rev'd on other grounds*, 399 S.W.3d 128, 130 (Tex. 2013) (per curiam). As such, we must focus on the information that Lance had available to him at the time he made his report to determine whether his report was made in good faith. *See City of Brenham v. Honerkamp*, 950 S.W.2d 760, 764 (Tex. App.—Austin 1997, pet. denied) (all that is required an "honest, objectively reasonable belief" that a violation of law occurred). The record reflects that, at the time Lance made his report, he had not seen the M-Ref nor had he been informed of the conditional nature of the recommendation for the nonemergency removal of the child. Therefore, we will indulge the assumption that Lance genuinely believed that the nonemergency removal of the child had been directed by the M-Ref.

During this same time period, Ward disclosed preliminary autopsy reports relating to L.M.A. to Lance, but Ward expressly informed Lance that the autopsy results were confidential and could not be disclosed to anyone. Even though he was specifically advised as to the confidential nature of the autopsy results, Lance disclosed the autopsy results to his best friend. As a result of this breach of confidentiality, Ward felt that he could no longer trust Lance, which he felt would affect Lance's ability to effectively perform his job as a probation officer.

The Department began an investigation into the actions of Lance.[3] As a result of this investigation, it was discovered that Lance had disclosed the confidential autopsy report information, made several false statements to CPS workers regarding a criminal investigation into CPS's handling of the case, and had previously made a false disciplinary report against his secretary. Upon learning the results of the investigation, the three-member Board held a meeting at which time it unanimously voted to terminate Lance on February 6, 2013. Likewise, the Department terminated Lance on the same date. Both employers cited a lack of trust in Lance that would impair Lance's ability to perform the essential duties of his positions.

Lance unsuccessfully challenged his terminations through appropriate grievance processes. He filed suit against appellants on April 9, 2013. Appellants each filed pleas to the jurisdiction. The trial court held a hearing on these pleas on May 12, 2014. The trial court denied the pleas by order on May 19. Appellants appealed this denial. *See*

---

[3] Upon discovering that the Department was conducting an investigation into Lance, the Board, through Juvenile Board Member and District Judge Ruben Reyes, asked that the Department conduct its investigation on behalf of the Board as well.

4

Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2014); *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840-46 (Tex. 2007).

While both appellants filed separate briefs, both present the same three issues. Each of these issues relate to whether Lance made a sufficient jurisdictional showing of a valid claim under the Texas Whistleblower Act to overcome appellants' sovereign immunity. By their first issue, appellants contend that Lance's report did not constitute a report of a violation of law. By their second issue, appellants contend that Lance's report of an alleged violation of law was not made in good faith. By their third issue, appellants contend that Lance failed to establish that his report was the but-for cause of his termination. Because we will conclude that Lance failed to establish that he reported a violation of law, we will not address appellants' second or third issues. *See* Tex. R. App. P. 47.1.

## Standard of Review

A plea to the jurisdiction challenges the court's authority to decide a case. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149 (Tex. 2012); *Sw. Pharmacy Solutions, Inc. v. Tex. Health & Human Servs. Comm'n*, 408 S.W.3d 549, 556 (Tex. App.—Austin 2013, pet. denied). Challenges to a trial court's subject-matter jurisdiction are properly raised by a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review a trial court's ruling on a plea to the jurisdiction *de novo*. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

5

When a plea to the jurisdiction challenges the pleadings, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true to determine if the pleader has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Heckman*, 369 S.W.3d at 150; *Sw. Pharmacy Solutions*, 408 S.W.3d at 556. When the plea challenges the jurisdictional facts, the trial court may consider any evidence the parties have submitted and must do so when necessary to resolve the jurisdictional inquiry. *Miranda*, 133 S.W.3d at 227; *Blue*, 34 S.W.3d at 555; *Sw. Pharmacy Solutions*, 408 S.W.3d at 556. If the plaintiff's factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, the plaintiff must raise a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction. *Miranda*, 133 S.W.3d at 221, 227. The standard of review applicable to a ruling on a plea to the jurisdiction generally mirrors the standard that applies to a traditional summary judgment under Texas Rule of Civil Procedure 166a(c). *Id.* at 228.

The Texas Whistleblower Act prohibits a governmental entity from terminating or taking any adverse employment action against an employee who, in good faith, reports to an appropriate law enforcement authority a violation of law by the entity or a public employee. *Montgomery Cnty. v. Park*, 246 S.W.3d 610, 612 (Tex. 2007) (citing TEX. GOV'T CODE ANN. §§ 554.001-.010). The act contains a provision waiving sovereign immunity to the extent of liability for authorized relief. TEX. GOV'T CODE ANN. § 554.0035 (West 2012) ("A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter.

6

Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter."); *see State v. Lueck*, 290 S.W.3d 876, 881-82 (Tex. 2009).  To demonstrate the trial court's jurisdiction over an asserted Whistleblower Act claim, a plaintiff must actually allege a violation of the Act and not merely reference it.  *Lueck*, 290 S.W.3d at 882 (quoting *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001), as holding "Mere reference to the . . . Act does not establish the state's consent to be sued and thus is not enough to confer jurisdiction on the trial court").  When challenged by a plea to the jurisdiction, a plaintiff must raise a genuine issue of material fact as to each element of a Whistleblower Act claim to establish that he has alleged a violation under the Act, which is necessary to defeat the plea and establish the trial court's subject matter jurisdiction over the case. *See id.* at 881, 884; *Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 188 (Tex. App.—Dallas 2012, pet. denied).

To prove a violation of the Whistleblower Act, a plaintiff must establish that: (1) he is a public employee; (2) he acted in good faith in making a report; (3) the report involved a violation of law by an agency or employee; (4) the report was made to an appropriate law enforcement authority; and (5) he suffered retaliation as a result of making the report.[4]  TEX. GOV'T CODE ANN. § 554.002(a) (West 2012); *Phelan v. Tex. Tech Univ.*, No. 07-07-00171-CV, 2008 Tex. App. LEXIS 500, at *8 (Tex. App.— Amarillo Jan. 23, 2008, pet. denied) (mem. op.).

---

[4] Appellants do not challenge that Lance is a public employee or that he made his report to appropriate law enforcement authority.  Appellants do challenge whether Lance made his report in good faith and whether he suffered retaliation as a result of making the report.  However, because we conclude that Lance failed to raise a genuine issue of material fact on the issue of whether he reported a violation of law by an agency or employee, we need not and do not address these issues.  *See* TEX. R. APP. P. 47.1.

## Issue One: Violation of Law

By their first issue, appellants contend that Lance did not report a violation of law when he reported on CPS's failure to remove L.M.A. Rather, appellants contend that Lance's report was only of a violation of internal CPS policy. Lance responds by citing to a list of laws that he claims CPS violated.

A plaintiff asserting a claim for violation of the Texas Whistleblower Act must raise a genuine issue of material fact as to each element of a Whistleblower claim to overcome a governmental entity's plea to the jurisdiction. *See Lueck*, 290 S.W.3d at 881; *Mullins*, 357 S.W.3d at 188. The element appellants challenge by their first issue is whether Lance reported a violation of law by an agency or employee. *See* TEX. GOV'T CODE ANN. § 554.002(a). Whether the employee reported a violation of law is a question of law, not fact. *Wilson v. Dallas Indep. Sch. Dist.*, 376 S.W.3d 319, 326 (Tex. App.—Dallas 2012, no pet.); *Rogers v. City of Fort Worth*, 89 S.W.3d 265, 274 (Tex. App.—Fort Worth 2002, no pet.). Initially, a plaintiff is not required to identify the specific law he contends was violated but, at some point in the litigation, the plaintiff must specify the law that was allegedly violated. *Wilson*, 376 S.W.3d at 327. The plaintiff's report invokes the waiver of sovereign immunity only if the conduct reported by the plaintiff constitutes a violation of law. *See Univ. of Houston v. Barth*, 403 S.W.3d 851, 854-55 (Tex. 2013); *Guillaume v. City of Greenville*, 247 S.W.3d 457, 462 (Tex. App.—Dallas 2008, no pet.). The law that is reported to have been violated may be a state or federal statute, local ordinance, or rule adopted under a statute or ordinance. TEX. GOV'T CODE ANN. § 554.001(1) (West 2012).

The evidence in this case establishes that Lance's report of an alleged violation of law was that CPS had made an M-Ref involving L.M.A. that directed[5] an employee of CPS, Eddie Huskey, to do a nonemergency removal of L.M.A but that Huskey failed to do so. Lance contends that this conduct constituted violations of eleven statutes. However, a review of the record makes clear that Lance did not report any conduct that would violate any of these eleven statutes.

Lance contends that CPS violated Texas Family Code section 261.105(b) and (d), which requires CPS to notify law enforcement of any report it receives of abuse or neglect of a child. *See* TEX. FAMILY CODE ANN. § 261.105(b), (d) (West 2014). However, it is clear that Lance did not report that CPS had failed to notify law enforcement of a report of abuse or neglect relating to L.M.A. Further, the information that Lance obtained from Collins did not indicate whether CPS had received a report of abuse or neglect relating to L.M.A. or that CPS had failed to report any notification of abuse or neglect to law enforcement. Consequently, Lance's report to law enforcement did not describe acts that would violate section 261.105(b) and (d).

Next, Lance contends that CPS violated Texas Family Code section 261.301, which describes the nature of an investigation into a report that a child is being abused or neglected. *See id.* § 261.301 (West 2014). However, Lance's report to law enforcement was not that CPS had failed to adequately investigate any report of abuse or neglect of L.M.A. Rather, Lance's report was that CPS failed to remove the child which was the recommendation *that resulted from the investigation.* Further, as above, at the time that Lance made his report to law enforcement, he was unaware of any

---

[5] *See* n.2 *supra.*

aspect of CPS's investigation other than that CPS had directed the nonemergency removal of the child but had failed to accomplish this action. Consequently, Lance's report to law enforcement did not describe acts that would violate section 261.301.

Lance also contends that CPS violated Texas Family Code section 261.302, which identifies how CPS may conduct its investigations. *See id.* § 261.302 (West 2014). As with the statutes above, Lance's report to law enforcement did not contend that CPS failed to adequately conduct an investigation into any alleged abuse or neglect of L.M.A. Further, unless the child is interviewed or CPS believes that a child needs to be immediately removed from the child's home, everything in this statute is permissive. *See id.* There is no evidence that CPS determined that L.M.A. needed to be removed from her home immediately. In fact, the recommended removal was a nonemergency removal. While there is some suggestion in the record that the child might have been interviewed, there is nothing to indicate that any interview was not taped. More significantly though, it is clear that Lance's report to law enforcement made no reference to CPS failing to tape an interview with L.M.A. Consequently, Lance's report to law enforcement did not describe acts that would violate section 261.302.

Lance also contends that CPS violated Texas Family Code section 261.3021, which identifies how CPS should develop its casework documentation and management systems. *See id.* § 261.3021 (West 2014). Like above, nothing in Lance's report to law enforcement referenced, in any way, CPS's casework documentation and management systems. In addition, the entire statute is made "[s]ubject to the appropriation of money for these purposes . . . ." Nothing in the record of this case indicates that funds had been appropriated to the Lubbock CPS Department to institute these casework

10

documentation and management systems. Consequently, Lance's report to law enforcement did not describe acts that would violate section 261.3021.

Lance contends that CPS violated Texas Family Code section 261.307, which requires CPS to provide a written notification of certain information to the person or persons having legal custody of a child that is the subject of an investigation. *See id.* § 261.307 (West 2014). Like above, Lance did not cite any failure on the part of CPS to provide written notification to L.M.A.'s mother in his report to law enforcement. Further, since all of Lance's information came from Collins, there is no way that Lance could know whether CPS provided L.M.A.'s mother with the written notification required by this section. Consequently, Lance's report to law enforcement did not describe acts that would violate section 261.307.

The last section of the Texas Family Code that Lance contends CPS violated is section 261.308, which requires CPS to prepare a written report of its investigation. *See id.* § 261.308 (West 2014). Again, Lance's report to law enforcement made no reference to any lack of written report on the part of CPS. Lance states in his brief that there was no complete report of CPS's investigation until March 6, 2013. However, the record reflects that there was a written M-Ref prepared by CPS in November 2012, that discussed the possibility that L.M.A. be removed by a nonemergency removal. In addition, there is nothing in section 261.308 that provides a deadline or timetable for the preparation of this written report. Consequently, Lance's report to law enforcement did not describe acts that would violate section 261.308.

Lance also contends that CPS violated section 40.002(b)(1) of the Texas Human Resources Code, which generally imposes upon CPS the responsibility to provide protective services for children, including investigating alleged abuse, neglect, and exploitation. *See* TEX. HUM. RES. CODE ANN. § 40.002(b)(1) (West 2013). Again, Lance's report to law enforcement was that CPS failed to make a nonemergency removal of a child. While this could fall within the extremely broad mandate that CPS provide protective services for children, we cannot conclude that this statute imposes such an onerous obligation on CPS. As mentioned above, Lance's report to law enforcement did not specifically identify any deficiency in CPS's investigation into L.M.A.'s situation and, in fact, was based on the nonemergency removal that was recommended *as the result of the investigation*. Consequently, Lance's report to law enforcement did not describe acts that would violate section 40.002(b)(1).

Next, Lance contends that CPS violated Texas Penal Code section 6.03, which defines the different culpable mental states that are used in other provisions of the penal code. *See* TEX. PENAL CODE ANN. § 6.03 (West 2011). Specifically, Lance contends that CPS and, particularly, Huskey acted with criminal recklessness or, at least, was criminally negligent in their failure to effectuate the nonemergency removal of L.M.A. However, this statute defines culpable mental states that are criminalized by other penal provisions tied to specific conduct. Even if Lance's report to law enforcement could be said to have been a report that Huskey acted with a criminally reckless or negligent mind, the report does not identify a violation of any law. Consequently, Lance's report to law enforcement did not describe acts that would violate section 6.03.

Similarly, Lance contends that CPS violated Texas Penal Code section 6.04, which defines causation within the criminal context. *See id.* § 6.04 (West 2011). As with the proceeding section, this statute defines criminal causation but the statute does not criminalize anything itself. Thus, even if Lance's report to law enforcement could be said to have been a report that Huskey and/or CPS caused some harm by their failure to remove L.M.A., by itself, the report does not identify a violation of any law. Further, in his discussion of this alleged violation of law, Lance contends that if Huskey had performed a prompt and thorough investigation, the death of L.M.A. could have been avoided and, therefore, Huskey's failure to investigate was the criminal cause of L.M.A.'s death. Once again, however, we note that Lance's report to law enforcement did not contend that CPS's investigation was inadequate. Rather, Lance's report to law enforcement was that CPS did not make a nonemergency removal of L.M.A. after such a directive *resulted from their investigation.* Consequently, Lance's report to law enforcement did not describe acts that would violate section 6.04.

Lance contends that CPS violated section 22.04 of the Texas Penal Code, which creates the criminal offense of injury to a child. *See id.* § 22.04 (West Supp. 2014). Again, Lance's appellate contention is premised on Huskey "failing to fulfill his statutory duty to perform a prompt and thorough investigation . . . ." However, Lance's report to law enforcement was that CPS failed to make a nonemergency removal of the child and not that it failed in its investigation. Further, as appellants point out, the statute criminalizes a failure to act only when the person or entity failing to act has a legal duty

13

to act or has assumed care, custody, or control of the child.[6] *See id.* § 22.04(b). While Lance contends that CPS had a legal duty to remove L.M.A., CPS acts in a quasi-judicial capacity when it conducts its investigations and, as a result, has only a discretionary duty to remove a child from a home. *See Austin v. Hale*, 711 S.W.2d 64, 67 (Tex. App.—Waco 1986, no pet.). As such, Lance's report to law enforcement did not describe acts that would violate section 22.04.

Lance also contends that CPS violated section 22.041 of the Texas Penal Code, which creates the criminal offense of abandoning or endangering a child. *See* TEX. PENAL CODE ANN. § 22.041 (West 2011). Specifically, Lance points to subsection (c), which provides that a person commits an offense if he engages in conduct that places a child younger than fifteen years in imminent danger of death or bodily injury. *Id.* § 22.041(c). Once again, Lance points to CPS's alleged failure to investigate L.M.A.'s situation fully and promptly. However, Lance's report to law enforcement did not take issue with CPS's investigation. In fact, Lance's report to law enforcement was that CPS did not effectuate its directive to make a nonemergency removal of L.M.A., which was the recommendation that was *derived from its investigation*. As such, Lance's report to law enforcement acknowledged that CPS did not conclude that L.M.A. was in imminent danger of death or bodily injury. Consequently, Lance's report to law enforcement did not describe acts that would violate section 22.041.

Finally, Lance cites *Dep't of Protective & Regulatory Servs. v. Schutz*, 101 S.W.3d 512, 521 (Tex. App.—Houston [1st Dist.] 2002, no pet.), for the general duty

---

[6] There is no dispute that CPS did not have care, custody, or control of L.M.A. at any relevant time.

14

imposed on CPS to provide protective services for children, including investigating alleged abuse, neglect, and exploitation. Again, Lance's report to law enforcement was that CPS failed to make a nonemergency removal of a child. While this failure could fall within the extremely broad mandate that CPS provide protective services for children, we cannot conclude that this general duty imposes such an onerous obligation on CPS. As mentioned above, Lance's report to law enforcement did not specifically identify any deficiency in CPS's investigation into L.M.A.'s situation and, in fact, was based on the nonemergency removal that was recommended *as the result of the investigation*. Consequently, Lance's report to law enforcement did not describe acts that would violate the general duty to protect children that has been legislatively imposed on CPS.

Further and of significance, even were we to assume that CPS was derelict in failing to take the appropriate steps to effectuate a nonemergency removal of L.M.A., Lance acknowledges that what CPS does to effectuate a nonemergency removal is to "file paperwork with the court . . . ask[ing] for temporary managing conservatorship of the child or children." Thus, Lance acknowledges that CPS did not possess the authority to have removed L.M.A. from the home. Rather, CPS was to initiate a process by which CPS might be afforded the authority to remove the child from the home. Because Lance worked for CPS for approximately four years, he would be aware of the fact that CPS does not have independent authority to remove a child in these circumstances. Therefore, the conduct that Lance reported was not CPS's failure to remove the child but, rather, CPS's failure to ask the appropriate trial court for the authority to remove the child. Because CPS's authority to perform the action reported by Lance to law enforcement is dependent on obtaining authority from a third-party, a

15

fact which Lance knew due to his prior employment with CPS, we cannot conclude that Lance's report to law enforcement was a good faith report of a violation of a legal duty owed by CPS.

After reviewing the conduct that Lance reported to law enforcement in light of the eleven statutes Lance identified as having been violated by CPS, we conclude that Lance failed to specify any law that CPS violated by the conduct that he reported to law enforcement. *See Wilson*, 376 S.W.3d at 327. As such, Lance has failed to state a claim under the Texas Whistleblower Act that is sufficient to overcome appellants' sovereign immunity. *See Univ. of Houston*, 403 S.W.3d at 855; *Guillaume*, 247 S.W.3d at 462. Consequently, we conclude that the trial court erred in denying appellants' pleas to the jurisdiction.

## Conclusion

Having determined that Lance failed to raise a genuine issue of material fact regarding whether he reported conduct that constituted a violation of any law cited by Lance, *see Lueck*, 290 S.W.3d at 881; *Miranda*, 133 S.W.3d at 221, 227, we reverse the trial court's denials of appellants' pleas to the jurisdiction, grant the pleas, and dismiss Lance's Whistleblower claims for lack of jurisdiction. *See* TEX. R. APP. P. 43.2(c). Due to our resolution of this issue, we need not address the other issues raised by appellants. *See* TEX. R. APP. P. 47.1.

Mackey K. Hancock
Justice

16