James MULLINS, Appellant,

v.

DALLAS INDEPENDENT SCHOOL
DISTRICT, Appellee.

No. 05–11–00465–CV.

Court of Appeals of Texas,
Dallas.

Jan. 5, 2012.

Steven E. Clark, Zak Duffy, Walter G. Pettey, III, McDole, Kennedy & Williams, P.C., Hance W. Burrow, III, Goins Underkofler Crawford & Langdon, LLP, Dallas, TX, for Appellant.

Carlos G. Lopez, Jamison Newberg, Kathryn E. Long, Vincent Lopez Serafino Jenevein, P.C., Dallas, TX, for Appellee.

Before Justices MORRIS, O'NEILL, and FILLMORE.

## OPINION

Opinion By Justice MORRIS.

This case involves a claim brought under the Texas Whistleblower Act. The trial court granted the Dallas Independent School District's plea to the jurisdiction and dismissed James Mullins's claim. In a single issue, Mullins contends the trial court erred in granting the plea because he presented sufficient evidence to raise a question of fact about the trial court's jurisdiction over his claim. We conclude Mullins failed to meet his burden to raise a fact question on the issue of subject matter jurisdiction. We affirm the trial court's order granting the plea.

### I

Before filing this lawsuit, James Mullins was employed in the maintenance department of the Dallas Independent School District. On August 13, 2009, Mullins sued DISD setting forth various claims based on the termination of his employment. Among the causes of action asserted were claims under the Texas Whistleblower Act. Mullins claimed he was terminated in retaliation for reporting to DISD's Office of Professional Responsibility violations of law by DISD and its employees. DISD answered and filed numerous motions in response to the petition. At issue here is DISD's "Third Plea to the Jurisdiction and Partial Motion to Dismiss Plaintiff's Claim Pursuant to the Texas Whistleblower Act."

In its third plea to the jurisdiction, DISD claimed sovereign immunity. It contended the trial court had no subject matter jurisdiction over one of Mullins's claims under the Whistleblower Act. Specifically, DISD argued that Mullins's claim based on a 2008 e-mail exchange with an employee in its Office of Professional Responsibility did not fall within the act's waiver of sovereign immunity because (1) Mullins's report to OPR did not allege violations of law, (2) the report was not sent to an appropriate law enforcement authority, and (3) the evidence showed Mullins did not have a good faith belief that OPR was an appropriate law enforcement authority for purposes of the Whistleblower Act. The trial court granted DISD's plea and dismissed Mullins's whistleblower claim "with respect to his September 2008 report to DISD's Office of Professional Responsibility." This appeal ensued.

### II.

Whether a trial court has subject matter jurisdiction is a question of law. See Tex. Natural Res. Conservation Comm'n v. IT–Davy, 74 S.W.3d 849, 855 (Tex.2002). We review de novo whether a plaintiff has set forth facts that affirmatively demonstrate a trial court's subject matter jurisdiction. See Tex. Dep't. of Parks and Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.2004). Where a plea to the jurisdiction challenges the existence of jurisdictional facts, as is the case here, the court considers the relevant evidence submitted by the parties to resolve the jurisdictional issues. Id. at 227. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the court may rule on the plea to the jurisdiction as a matter of law. Id.

In general, school districts such as DISD are immune from suit and liability unless the legislature expressly waives sovereign immunity. See State v. Lueck,

290 S.W.3d 876, 880 (Tex.2009). Section 554.0035 of the Texas Government Code expressly waives sovereign immunity for claims brought under the Texas Whistleblower Act. *See* TEX. GOV'T CODE ANN. § 554.0035 (West 2004). For immunity to be waived, however, the plaintiff must be a public employee and properly allege a violation of the act. *See Lueck*, 290 S.W.3d at 881. Whether the plaintiff has properly alleged a violation of the act is a jurisdictional question. *Id.* We determine whether the jurisdictional prerequisite of alleging a violation has been met by examining the elements of a violation as set forth in section 554.002 of the government code. *See Tex. Dep't. of Human Servs. v. Okoli*, 317 S.W.3d 800, 805 (Tex.App.-Houston [1st Dist.] 2010, pet. filed).

Under section 554.002, "a state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." *See* TEX. GOV'T CODE ANN. § 554.002(a). A report is made to an appropriate law enforcement authority if "the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." *Id.* § 554.002(b).

In this case, Mullins alleged that he was terminated from his position in the maintenance department of DISD as a result of a report he made to DISD's Office of Professional Responsibility. The specific report upon which Mullins relies, and upon which the trial court ruled, is contained in a series of e-mail sent in September 2008.

Mullins contends he presented sufficient evidence to the trial court to at least raise a fact issue about whether the e-mail constituted a good faith report of a violation of law to an appropriate law enforcement authority.

To determine whether Mullins's claim alleges a violation of the Whistleblower Act and, therefore, falls within the scope of claims for which sovereign immunity has been waived, we must first examine the report upon which the claim is based. All of the e-mail that make up the "report" were between Mullins and George Santowski, a director of compliance with DISD's Office of Professional Responsibility. In his first e-mail, Mullins told Santowski that he had been "a vocal advocate/activist with regard to several issues for more than ten years." Mullins then listed eight different issues about which he had made complaints or reports to a variety of other authorities. These past complaints involved allegations of: (1) improper or illegal installation of sewage ejection stations; (2) asbestos issues at DISD facilities; (3) the refusal of supervisors and administrators to pull permits properly for construction projects; (4) the refusal of supervisors and administrators to perform "backflow prevention device maintenance, repair, and/or testing;" (5) the failure by DISD to implement an effective, efficient material procurement procedure and the failure of select supervisors and administrators to exercise good stewardship of DISD resources; (6) the refusal of supervisors and administrators to investigate or correct obvious time card irregularities; (7) the abuse of authority by supervisors and administrators by intimidating employees into falsifying records; and (8) the failure of select administrators to exercise oversight responsibilities. Mullins included information about the authorities to whom he had reported his allegations including OSHA, the Texas Department of State

Health Services, and the City of Dallas.[1] Mullins then stated that his past advocacy and activism with respect to these issues had resulted in, among other things, ongoing harassment, disciplinary action without cause, improper denial of professional advancement, and the creation of a hostile work atmosphere. He then asked for "feedback" from Santowski.

Santowski replied to Mullins's e-mail stating "[b]ased upon your email and our conversations you have already gone to: local, state and federal regulatory authorities with your complaints and have received no satisfaction from them." Santowski went on to state that neither he nor Mullins could determine why the agencies "charged with the responsibility of enforcing the laws relating to the violations [Mullins] allege[d] would shirk their responsibilities and ignore the concerns that [he] raised if those concerns were valid." Santowski ended the e-mail by telling Mullins "[u]nless I hear otherwise from you, I plan on sending your concerns to appropriate Dallas ISD officials for their evaluation."

Mullins responded by sending Santowski more details on the reports he had made to other authorities. He suggested that Santowski send open records requests to the City of Dallas for information on the "backflow prevention device" issue. At the end of the e-mail, Mullins stated "[a]s to why an agency would shirk their [sic] responsibility in enforcing the laws that they are charged with enforcing, I can only speculate. Actually, I came to you in hopes that you could perform an investigation into why this is happening. Also I have numerous additional documents to support the allegations in my email."

In an e-mail sent shortly thereafter, Mullins asked Santowski "[w]hat exactly is the office of OPR? Does it have any in-

vestigatory authority or role?" Santowski responded that "OPR investigates fraud, waste and abuse within the Dallas ISD. [It has] no authority to investigate local, state and federal regulatory agencies. Consequently, I need no further documentation of your contacts with these agencies and their alleged transgressions."

In an e-mail to Santowski sent the next day, Mullins asked whether OPR included "the abuse of authority as a type of abuse that is within it's [sic] mandate to investigate." Mullins specifically asked whether OPR had the power to investigate "retaliatory actions taken to intimidate/discipline a subordinate when that subordinate has contacted outside agencies to correct improper/illegal activities engaged in by the Dallas ISD" and whether OPR could investigate "pressuring a subordinate to falsify gas test reports to a state agency." The record does not contain a response from Santowski to this e-mail.

One day later, Mullins sent his final e-mail to Santowski in which he discussed at length how several of the complaints he had made to other authorities could be considered allegations of fraud, waste, or abuse. Mullins stated that he considered the time card irregularities he referred to in his original e-mail to implicate issues of fraud. He further considered the sewage ejection station problems he alleged, as well as the purportedly poor management decisions, inefficient procurement procedures and poor management of material and staff resources by certain supervisors and administrators to implicate both waste and abuse. Mullins asked if any of these allegations fell within OPR's investigatory authority. Santowski responded that there appeared to be "some waste issues involved here." Santowski further stated

1. Mullins also asserted whistleblower claims based on the earlier reports made to other authorities but those reports are not at issue in this appeal.

that he had "forwarded [Mullins's] initial and supplemental reports to responsible management officials in the District for them to evaluate and address as appropriate." No other e-mail was part of the "report" that forms the basis of the whistleblower claim the trial court dismissed.

■ As stated above, the waiver of immunity for claims under the Whistleblower Act applies only to allegations by a public employee that adverse personnel action was taken against him after he made a good faith report of a violation of law to an appropriate law enforcement authority. *See* TEX. GOV'T CODE ANN. § 554.002(a). The specific law the employee alleges was violated is critical to determining whether the report was made to an appropriate law enforcement authority. *See Tex. Dep't. of Transp. v. Needham*, 82 S.W.3d 314, 320 (Tex.2002). The authority to which the report was made must have the power to "regulate under or enforce *the law alleged to be violated.*" *See* TEX. GOV'T CODE ANN. § 554.002(b)(1) (emphasis added). Alternatively, the authority to which the report was made must be authorized to "investigate or prosecute a violation of *criminal law.*" *Id.* (emphasis added).

■ Mullins contends it was not necessary for him to specify the exact law being violated so long as his report provided a factual basis to support a violation of law.[2] While it may not be necessary for a report to specify the law being violated, or to prove an actual violation, there must be some law prohibiting the complained of conduct to give rise to a claim under the act. *See Llanes v. Corpus Christi Indep. Sch. Dist.*, 64 S.W.3d 638, 642 (Tex.App.-Corpus Christi 2001, pet. denied). And the "law" must be a state or federal statute, an ordinance, or a rule adopted under a statute or ordinance. *See* TEX. GOV'T CODE ANN. § 554.001(1). Other complaints and grievances, including alleged violations of an agency's internal procedures and policies, will not support a claim. *See id.*

■ In its plea to the jurisdiction, DISD asserted and provided evidence to show that Mullins both failed to report a violation of law and failed to make his report to an appropriate law enforcement authority. If either of these elements is lacking, there is no waiver of immunity and the trial court does not have subject matter jurisdiction. To establish, or at a minimum raise, a fact issue on these jurisdictional elements, Mullins had the burden in his response to DISD's plea to produce more than a scintilla of evidence showing that he reported a violation of an existing law, or what he believed in good faith to be a violation of an existing law, to an appropriate law enforcement authority. *See Llanes*, 64 S.W.3d at 643. Because DISD asserted that Mullins failed to report a violation of law, and the specific law violat-

---

2. In support of this proposition, Mullins cites *Phelan v. Tex. Tech. Univ.*, No. 07–07–0171–CV, 2008 WL 190741 (Tex.App.-Amarillo 2008, pet. denied) (not designated for publication) and *Univ. of Tex. at San Antonio v. Wells*, No. 04–10–00615–CV, 2011 WL 446642 (Tex.App.-San Antonio 2011, no pet.) (not designated for publication). In *Phelan*, the court stated in a footnote that the plaintiff did not specify the specific statute, ordinance, or rule he asserted was violated but that his pleadings could be read to allege a criminal offense. *See Phelan*, 2008 WL 190741, at *6 n. 4. It was unnecessary for the court to ad-

dress whether such a vague allegation was sufficient to satisfy the act's requirement that the plaintiff report a violation of law because it concluded that the authority that received the report had no power to regulate under, enforce, investigate, or prosecute any violation of the Penal Code. *Id.* Similarly, in *Wells*, the court stated that it need not address whether the plaintiff had alleged a violation of law because the authority to which the plaintiff reported had no power to regulate under, enforce, investigate, or prosecute any laws that may have related to the conduct reported. *See Wells*, 2011 WL 446642, at *2 n. 1.

ed is critical to the determination of whether the report was made to an appropriate authority, Mullins was required to respond to DISD's assertions by identifying what law or laws he believed were violated by the conduct described in his report to OPR. *See Needham,* 82 S.W.3d at 320; *see also, Llanes,* 64 S.W.3d at 642–43.

Mullins refers us to several laws that he believes were violated by DISD or its employees. First, he argues that in his e-mail to OPR he reported that employees were being forced to work in asbestos hazard areas without the required protective equipment or training. According to Mullins, this conduct violated "both OSHA and the Clean Air Act." Mullins makes no argument that OPR had the power to regulate under or enforce any of the statutes or provisions he cites. Nor does he assert that he had a good faith belief that OPR could regulate under or enforce those laws. Mullins argues only that he believed in good faith that OPR had the power to investigate his allegations and this power made it an appropriate law enforcement authority to which to make his report.

 Investigatory power may make a governmental entity an appropriate law enforcement authority for purposes of the act only if the plaintiff has reported a violation of criminal law. *See* Tex. Gov't Code Ann. § 554.002(b)(2). Furthermore, the criminal conduct reported must be within the investigatory powers of the authority receiving the plaintiff's report or the plaintiff must have a good faith belief that the conduct was within the investigatory powers of the authority to which he reported. *See Okoli,* 317 S.W.3d at 810. Of the provisions cited by Mullins, only one provision of the Clean Air Act carries any criminal penalties. *See* 42 U.S.C. § 7413(c)(1) (2003). According to Mullins, DISD was subject to criminal penalties for failing to follow the asbestos work practice

standards adopted by the federal Environmental Protection Agency. *See id.* Even assuming the conduct Mullins reported implicated the law he argues was violated, OPR's investigatory authority does not include the power to investigate alleged criminal violations of the Clean Air Act nor did Mullins have any reasonable belief that it did so.

 According to the record before us, OPR states on its website that its mission is "to promote integrity in the Dallas Independent School District through the detection and prevention of fraud, waste and abuse." In furtherance of this mission, "OPR conducts ethics training, internal investigations of employee misconduct, districtwide operational reviews, and identifies opportunities for improving efficiency and effectiveness throughout the district." Among the stated purposes of OPR is "to investigate unethical behavior by District employees, make criminal referrals to all appropriate law enforcement agencies, and to recommend necessary changes to the affected District policy(ies)." OPR states that it can "conduct case development activities in conjunction with Internal Audit and other Dallas ISD offices, local, state and federal law enforcement agencies as well as other developed sources of information to identify potential areas of fraud, waste and abuse involving the district." Specifically, OPR's Office of Investigation "conduct[s] investigations and review[s] investigations carried out by others, to detect and prevent waste, fraud, and abuse in the District's programs and operations." OPR makes clear that the scope of its investigatory duties encompasses only the detection and prevention of waste, fraud and abuse in the DISD's programs and operations. The purpose of OPR is to promote the integrity of the school district by investigating employee misconduct and unethical behavior. Assuming without de-

ciding that the OPR's self-proclaimed investigatory authority may, under some circumstances, make it an appropriate law enforcement authority, Mullins presented no evidence to show that the scope of its responsibilities was broad enough to include the power to investigate alleged criminal violations of federal environmental laws. Mullins argues that his belief that it could investigate his allegations was sufficient to make OPR an appropriate law enforcement authority for purposes of the Whistleblower Act. We disagree.

A public employee's belief that the authority to which he made his report is an appropriate law enforcement authority may be sufficient to bring his whistleblower claim within the protections of the act only if his belief is in good faith. *See Needham,* 82 S.W.3d at 320. To have a good faith belief, it must be reasonable in light of the employee's training and experience. *Id.* at 321. The issue is whether a reasonably prudent employee in similar circumstances would have believed that the governmental entity to which he reported was an appropriate law enforcement authority. *Id.* at 320.

In this case, the evidence submitted by Mullins shows that OPR's statements defining the scope of its mission and purpose were on the DISD's website and available to the general public. As discussed above, OPR limits its investigations to the detection and prevention of unethical behavior such as waste, fraud, and abuse in the District's programs and operations. Not only was this information public and available to Mullins, but Santowski specifically informed him in his e-mail correspondence that the purpose of the OPR was solely to investigate fraud, waste, and abuse within DISD. Indeed, the evidence shows that Mullins was uncertain about the scope of OPR's authority at the time he began making his report and he relied on Santowski's

statements. Mullins did not initially report his allegations about violations of the asbestos work practice standards to OPR but instead reported them to OSHA and the Texas Department of State Health Services. It was only after these authorities failed to act on his reports that he complained to OPR about their lack of responsiveness and asked what the OPR could do to help. We conclude that there is no evidence Mullins reasonably believed at the time he made his report that OPR had the authority to investigate criminal violations of a federal environmental law.

Mullins next identifies provisions of the Texas Plumbing License Law that he believes were violated by the acts set forth in his report to OPR. The first provision he cites is section 1301.452, which sets forth grounds for disciplinary action by the Texas State Board of Plumbing Examiners. *See* TEX. OCC.CODE ANN. § 1301.452 (West Supp. 2011). Mullins makes no argument that OPR had any ability to regulate under or enforce this provision. And although the section references disciplinary action, the discipline that may be imposed is purely professional and does not implicate any criminal penalties. *See id.* § 1301.451. Because section 1301.452 is not a criminal law, Mullins cannot rely on OPR's investigative authority to support his contention that it was an appropriate law enforcement authority to receive his report.

Mullins also cites us to sections 1301.501 and 1301.508 of the same chapter. Section 1301.501 states that a person may not sell, donate, or transfer a water closet plumbing fixture or other equipment that uses water if the fixture or equipment: (1) does not comply with a state-approved plumbing code; and (2) may permit the backflow of a nonpotable substance into a potable water supply. *See id.* § 1301.501 (West 2004). Section 1301.508 imposes

criminal penalties for violations of the chapter. *See id.* § 1301.508. Although the cited provisions implicate criminal penalties, Mullins fails to point to any allegations in his report that would, if true, constitute a violation of these provisions or that he, in good faith, believed would violate these provisions.[3] Furthermore, even if he had reported facts that would constitute a violation of section 1301.501, Mullins presented no evidence to show that OPR's mission to investigate waste, fraud, and abuse in DISD's programs and operations encompassed the ability to investigate criminal violations of state plumbing requirements or that he had any good faith belief that it did so.

◼ Mullins also points to his allegations about backflow prevention devices and the refusal of supervisors and administrators to properly pull permits for construction projects. Mullins argues this conduct violated sections 310.3 and 301 of the City of Dallas Administrative Procedures for the Construction Codes. Under the City of Dallas Administrative Procedures for the Construction Codes, a knowing violation of the chapter is subject to criminal penalties. As with Mullins's allegations relating to the Clean Air Act and the Texas Plumbing License Law, he has presented no evidence that the conduct he reported implicated fraud, waste, or abuse in DISD's programs and operations or that he had any reasonable belief that it did so.

◼ In his appellate brief, Mullins refers us to an answer he gave in response to an interrogatory in which he stated that he refused to "falsify gas test results" in 2007. Mullins cites to section 8.1(e) of the Texas Administrative Code that imposes criminal penalties on "a person who submits incorrect or false information with the intent of misleading the [Texas Railroad] Commission." *See* TEX. ADMIN. CODE § 8.1(e). Although Mullins alleges that he refused to falsify test results in his answer to the interrogatory, this allegation was not made in his report to OPR. The only reference Mullins made to gas testing in his 2008 e-mail correspondence to OPR was a statement about his supervisor's insistence that the plumbers in his shop turn in three "passing gas test results" per day. Mullins asserted that this expectation was unreasonable because the time allowed for the testing was inadequate. Mullins made no assertion in his report that any person turned in a falsified gas test result.

◼ Finally, in a single sentence in his reply brief, Mullins contends his report contained an allegation that he was asked to falsify "training records" and that this constituted "tampering with a government record" in violation of section 37.10(a)(1) of the Texas Penal Code. In his report, Mullins stated that he was chastised for refusing to falsify the training records of an apprentice plumber and that another plumber was later coerced into signing off on the falsified training records. Section 37.10(a)(1) of the Texas Penal Code makes it a criminal offense for a person to knowingly make a false entry in, or false alteration of, a governmental record. *See* TEX. PENAL CODE ANN. § 37.10(a)(1) (West 2011). A governmental record includes "anything belonging to, received by, or kept by government for information" and "anything required by law to be kept by others for information of government." *Id.* § 37.01(2). Mullins makes no argument to

---

3. The closest allegation would be his assertion that supervisors and administrators refused to perform "backflow prevention device maintenance, repair, and/or testing." This allegation, however, does not implicate section 1301.501 because it does not assert that a person sold, donated, or transferred a water closet plumbing fixture or other equipment that uses water.

support his assertion that the conduct he reported would constitute a violation of section 37.10(a)(1). He merely assumes the "training records" of an apprentice plumber are a governmental record as that term is defined by the penal code without indicating in any way the nature of the "records." Mullins also fails to present any argument or evidence that, in light of his training and experience, he had a good faith belief that the conduct he reported was a violation of section 37.10(a)(1).

In addition to tampering with a government record, Mullins argues that DISD's conduct with respect to the training records was also a potential violation of Texas Government Code section 552.351(a). Section 552.351 of the Texas Government Code makes it an offense for a person to willfully destroy, mutilate, remove without permission, or alter public information. *See* TEX. GOV'T CODE ANN. § 552.351 (West 2004). "Public information" is defined as information that is collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business by a governmental body or for a governmental body and the governmental body owns the information or has a right of access to it. *Id,* § 552.002(a). Again, Mullins presented no argument or evidence to show that the training records of an apprentice plumber could be considered "public information" or that he had a good faith belief that the alleged conduct was a violation of the cited law or any other criminal law. We conclude Mullins failed to raise a fact issue with respect to whether his allegations about the falsification of training records constituted a good faith report of a violation of an existing law as contemplated by the Whistleblower Act.

Based on the foregoing, we conclude Mullins failed to raise a fact issue with regard to the jurisdictional facts needed to support his whistleblower claim based on

his September 2008 e-mail. Mullins presented no evidence to show that his e-mail sent to OPR was a good faith report of a violation of law to an appropriate law enforcement authority. Because Mullins failed to provide evidence to support the elements of a violation of the Whistleblower Act, DISD maintained its sovereign immunity and the trial court properly granted its plea to the jurisdiction with respect to the September 2008 report.

We affirm the trial court's order granting DISD's plea to the jurisdiction.