**Reverse and Dismiss and Opinion Filed February 28, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00254-CV

**DALLAS INDEPENDENT SCHOOL DISTRICT, Appellant**
**V.**
**DOUGLAS WATSON, Appellee**

**On Appeal from the 95th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-08-12298-D**

## MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Lang-Miers
Opinion by Justice Bridges

Dallas Independent School District (DISD) appeals the trial court's judgment in favor of

Douglas Watson on Watson's claim under the Texas Whistleblower Act. In four issues, DISD

argues the trial court erred in finding it had subject-matter jurisdiction over Watson's claim, and

the evidence was factually insufficient to support the jury's finding that Watson's claim met the

requirements of a whistleblower claim; Watson did not provide to DISD the requisite notice of

the potential of a whistleblower claim, and the trial court erred in submitting DISD's proposed

jury question on the issue of notice; the trial court erred in denying DISD's motion for judgment

notwithstanding the verdict on the Whistleblower Act's statutory affirmative defense, the

evidence was legally and factually insufficient to support the jury's finding that Watson's phone

calls to regulatory agencies were the "but for" cause of his termination, and the trial court erred

in refusing to submit a related jury question and excluding evidence of Watson's disciplinary problems; and the evidence was legally and factually insufficient to support the jury's award of $400,000 in attorney's fees. We reverse the trial court's judgment and dismiss this cause for lack of subject-matter jurisdiction.

Watson worked for DISD as a plumber for nineteen and a half years until he was given notice of termination in September 2007 and subsequently terminated. On July 11, 2007, Debbie Pruitt, Watson's supervisor, notified him to stop his normal duties and start gas tests at schools in their division. Watson testified Pruitt "demanded that we do three [tests] a day." Watson and a co-worker, James Mullins, told Pruitt they were not sure they could complete three tests in a day. Watson and Mullins completed only one gas test that day.

On July 12, Pruitt indicated that Watson and Mullins "needed to hurry up," and she gave them additional work orders to complete. Watson completed a gas test on Walnut Hill Lane and proceeded to Hillcrest High School. Watson detected leaks in the system at Hillcrest and reported back to the office at the end of the day. Pruitt summoned Watson to her office where they discussed Watson's progress. An argument ensued, and Pruitt led Watson to the office of Cesar Villareal, with whom Pruitt shared the responsibilities of plumbing supervisor. The argument over the gas tests continued in Villareal's office, and Villareal ultimately asked Watson to leave the office.

On July 13, Watson called the Texas Railroad Commission (TRC) to "inform them [he] was being pressured into doing these gas tests in an unsafe, hurried-up manner." Watson contacted the TRC because they were "the ones that require that the school districts do these gas tests." The person Watson spoke to at the TRC told him to contact the Texas State Board of Plumbing Examiners (TSBPE). Watson called TSBPE and stated "it had been demanded of [him] that [he] do these three gas tests a day and that [he] felt like it was in an unsafe manner and

that for – in order for [him] to comply . . . ." The TSBPE representative did not tell Watson to file a written complaint, and Watson did not file a written complaint.

On Monday, July 16, Watson returned to work, and Pruitt told him he was "being taken off the gas tests." Watson was subsequently notified his employment was being terminated because of his insubordination and hostile and belligerent behavior. Watson appealed his termination through the grievance process, but he was ultimately terminated. Watson filed suit, claiming his termination violated the Texas Whistleblower Act. DISD filed a plea to the jurisdiction asserting Watson did not meet the requirements of the Whistleblower Act, and the trial court therefore lacked subject-matter jurisdiction. The trial court denied DISD's plea to the jurisdiction, and the case went to trial. A jury found (1) Watson made a good faith report of a violation of law by DISD to the TSBPE and/or the TRC and (2) his report was the cause of his termination. In accordance with its verdict, the jury awarded Watson damages and attorney's fees. The trial court entered judgment in favor of Watson, and this appeal followed.

In its first issue, DISD argues the trial court erred in finding it had subject-matter jurisdiction over Watson's claim, and the evidence was factually insufficient to support the jury's finding that Watson's claim met the requirements of a whistleblower claim.

The State and state agencies are immune from suit and liability in Texas unless the Legislature expressly waives sovereign immunity. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009); *see Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 185 (Tex. App.—Dallas 2012, pet. denied) (school districts such as DISD are immune from suit and liability unless legislature expressly waives sovereign immunity). The immunity provision in the Whistleblower Act states:

A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

TEX. GOV'T CODE ANN. § 554.0035 (West 2012); *Lueck*, 290 S.W.3d at 881. The standard for a "violation of this chapter" appears in section 554.002(a), which provides that the governmental entity "may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002(a) (West 2012).

The section 554.002(a) elements are jurisdictional in the sense that they must be pleaded in order for a plaintiff to have adequately alleged a violation of the chapter. *Lueck*, 290 S.W.3d at 884. "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* (quoting *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004)). "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* (quoting *Miranda*, 133 S.W.3d at 227.

Here, Watson's petition alleged he "contacted Johnny Burgess of the Texas Railroad Commission Pipeline Safety Division and Alex Rosenthal of the Texas State Board of Plumbing Examiners to report that he was being pressured by his supervisors at DISD to conduct gas tests on an accelerated basis rather than in a safe and complete manner." At trial, Watson testified he "was being pressured into doing these gas tests in an unsafe, hurried-up manner" and "it had been demanded of [him] that [he] do these three gas tests a day and that [he] felt like it was in an unsafe manner" for him to comply with the demand. Watson argues that, even if he "was mistaken about the correct law, he still receives whistleblower protection . . . if he made the report in good faith," citing *Texas Department of Transportation v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002); *Texas Department of Criminal Justice v. McElyea*, 239 S.W.3d 842, 850 (Tex.

–4–

App.—Austin 2007, pet. denied); and *City of Brenham v. Honerkamp*, 950 S.W.2d 760, 764 (Tex. App.—Austin 1997, pet. denied).

In *Needham*, a Texas Department of Transportation (TxDOT) employee reported to a TxDOT supervisor that a fellow employee had been driving while intoxicated. *Needham*, 82 S.W.2d at 317-18. The court initially determined TxDOT was "not an appropriate law enforcement authority" under section 554.002(b) because it did not have any authority to regulate under or enforce Texas's driving while intoxicated laws nor did it have authority to investigate or prosecute these criminal laws. *Id.* at 320. The court noted the reporting employee could still obtain Whistleblower Act protection if he in good faith believed that TxDOT was an appropriate law enforcement authority under section 544.002(b). *Id.* Although "good faith" had not been defined under section 544.002(b), the court set out the definition of the term in the context of subsection (a)'s requirement that the reporting employee have a good faith belief that another employee violated the law. *Id.* Citing *Wichita County v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996), the court reiterated "good faith" means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience. *Needham*, 82 S.W.3d at 320. Without applying the good faith test as it applied to the report of a violation of law, the court concluded the same test applies "to determine if a public employee in good faith believed the governmental entity to which he reported a violation of law was an appropriate law enforcement authority." *Id.* at 320-21. Under the facts of that case, the court concluded there was no evidence to support a finding that the reporting employee had a good faith belief that TxDOT was an appropriate law enforcement authority under the Whistleblower Act to report a co-worker's drunk driving. *Id.* at 321.

In *McElyea*, an internal affairs investigator in the Texas Department of Criminal Justice reported to his superiors that a TDCJ peace officer had "violated Department policies concerning approval of off-duty jobs and also potentially violated the Private Security Act and state law governing the use of state vehicles." *McElyea*, 239 S.W.3d at 845. Citing *Hart*, the court set forth the definition of "good faith" in the whistleblower context as (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience. *Id.* at 850 (citing *Hart*, 917 S.W.2d at 784). The court stated the first element, "honesty in fact," ensures that a public employee seeking a whistleblower-statute remedy believed that he was reporting an actual violation of law. *Id.* (citing *Needham*, 82 S.W.3d at 320). The second element ensures that even if the reporting employee honestly believed the reported act was a violation of law, the reporting employee only receives protection if a reasonably prudent employee in similar circumstances would have believed the facts as reported constituted a violation of law. *Id.*

The court in *McElyea* noted that, on appeal, the TDCJ took the position that the investigator's report was "too equivocal" and "phrased as a potential violation, not an actual violation" of law. *Id.* at 851. Therefore, TDCJ argued, the investigator failed to "make the necessary showing that he believed that a crime had been committed and has thus failed to satisfy the test's subjective 'honesty in fact' element." *Id.* The court determined TDCJ's argument ignored the investigator's "testimony in which he pinpointed the law that he believed [the officer] had violated and unequivocally asserted that he made the report." *Id.* The court concluded this evidence would allow a reasonable jury to conclude the investigator reported what he believed was an actual violation of law, not a potential violation. *Id.* at 852. Thus, the investigator satisfied the first good faith element. *See id.* at 851-52. As to the second element, the record showed the investigator reviewed mileage logs and pointed to a specific law that he

believed the officer violated: misuse of a state vehicle. *See id.* at 852-54. Under these circumstances, the court held the jury's conclusion that the investigator had sufficient information about the officer's use of his state vehicle to form a good-faith belief the officer had violated the law was not so contrary to the overwhelming weight of the evidence that it was clearly wrong and unjust. *Id.* at 854.

In *Honerkamp*, an environmental services manager for the City of Brenham worked with the City's water treatment plant, and many of his projects addressed chlorine levels because the City had at times experienced problems maintaining the required level of chlorine. *Honerkamp*, 950 S.W.2d at 763. The City was required by state regulation to maintain at least 0.5 milligrams of chlorine per liter of water in its water distribution system. *Id.* at 764. Further, the manager "understood the state's drinking water rules to require that the City maintain bacteria test sites in locations that were representative of drinking water conditions throughout the system. *Id.* The manager traveled to Austin and met with Gordon Townsend of the Texas Natural Resource Conservation Commission. *Id.* The manager told Townsend he did not believe the City's bacteria test sites were not representative of the system. *Id.* The record showed the manager pursued the topic by three letters following the meeting. *Id.* at 765. The court held the evidence of the exchange between the manager and Townsend at a public meeting supported a finding the manager reported a violation of law.

Here, Watson's allegations merely recite his prediction that completing three gas tests on a single day in the future might be "unsafe" and "hurried-up." There is no evidence that Watson actually completed three gas tests in one day or that doing so would have constituted a "violation of law" as required by section 554.002(a). His allegations of what might happen did not amount to a good-faith report of an existing or past violation of law. *See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 627 (Tex. 2010) (report of belief that laws might be violated in future not good-faith

report of existing or past violation of law) (citing *Lueck*, 290 S.W.3d at 885 (noting "prediction" of possible regulatory non-compliance" in the future does not equate to reporting a violation of law)); *McElyea*, 239 S.W.3d at 851-52. Because Watson did not report a violation of law, he failed to state a claim under the Texas Whistleblower Act. *See* TEX. GOV'T CODE ANN. § 554.002(a) (West 2012). Accordingly, the trial court did not have subject-matter jurisdiction over his claim. We sustain DISD's first issue.

We reverse the trial court's judgment and dismiss Watson's claims for lack of subject-matter jurisdiction.

120254F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DALLAS INDEPENDENT SCHOOL
DISTRICT, Appellant

No. 05-12-00254-CV     V.

DOUGLAS WATSON, Appellee

On Appeal from the 95th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-08-12298-D.
Opinion delivered by Justice Bridges.
Justices Moseley and Lang-Miers
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that:

This cause is **DISMISSED** for lack of subject matter jurisdiction.

It is **ORDERED** that appellant DALLAS INDEPENDENT SCHOOL DISTRICT recover its costs of this appeal from appellee DOUGLAS WATSON.

Judgment entered February 28, 2014

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE