**REVERSE and DISMISS; and Opinion Filed July 5, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01444-CV

**LAMAR CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, Appellant**
**V.**
**EBACKPACK, INC., Appellee**

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 1-15-1071**

# MEMORANDUM OPINION

Before Justices Lang-Miers, Stoddart, and Boatright
Opinion by Justice Lang-Miers

eBackpack, Inc. sued Lamar Consolidated Independent School District ("LCISD") for breach of contract. The trial court denied LCISD's plea to the jurisdiction. Because eBackpack seeks to recover damages that accrued after the parties' contract expired, LCISD is immune from suit, and the trial court should have granted LCISD's plea. Accordingly, we reverse the trial court's order and dismiss the case for want of jurisdiction.

## BACKGROUND

eBackpack provides web-based education management services for school districts. LCISD is a public school district located in Fort Bend County, Texas. The parties agree that they entered into a contract in 2013 under which LCISD would "purchase eBackpack services from eBackpack, Inc." commencing on July 1, 2013 (the "2013 Contract").

The 2013 Contract, entitled "eBackpack Contract Award Letter," was signed by Thomas Randle, LCISD Superintendent, and by Michael J. Zilinskas, the founder, president, and chairman of eBackpack, on March 8, 2013. The 2013 Contract's term was "One Year with 3 Automatic Extensions at Market Price," to commence on July 1, 2013. The contract provided that "[m]ulti-year option guarantees price," and stated a three-year total price of $149,400.00. The "quantity," encompassing "eBackpack Base Service—Staff, Teachers, Students," was 26,000 users. The parties proceeded to perform under the 2013 Contract.

On February 26, 2014, eBackpack sent LCISD an "E-Rate Proposal for Lamar Consolidated ISD" for web hosting services to begin on July 1, 2014. Randle signed this document (the "2014 Contract") on behalf of LCISD on March 26, 2014, under the statement "Customer acknowledges eBackpack is awarded this Contract," and returned the signed document to eBackpack. Like the 2013 Contract, the 2014 Contract provided that the parties agreed to be bound by the eBackpack "Terms of Service" available at a specified internet address. The 2014 Contract added that the Terms of Service "are hereby incorporated in this contract." The Terms of Service provided, in relevant part:

> Receipt by eBackpack of emails or other written correspondence from you indicating your approval of an eBackpack proposal, invoice, or the ordering of a Service ("proposal") shall constitute written acceptance of the eBackpack proposal and serves as your binding agreement to the terms set forth in such proposal.

The Terms of Service also provided that a contract could be cancelled or non-renewed by providing thirty days' advance written notification.

Under the 2014 Contract, the default term of service was one year. Although under "Term of Service," there were three alternatives, with an instruction to "select one," no selection was made.[1] The 2014 Contract provided for web hosting services for 23,000 users for one year for a

---

[1] The three selections were "One Year (Default)," "One Year with 3 Automatic Extensions at Market Price," and "Three Years."

total cost of $46,800.00. The 2014 Contract provided that "eBackpack may withdraw or modify this proposal for any reason until it has been accepted by both parties." The signature line under "Accepted by eBackpack, Inc." was blank on the copy Randle signed and returned (the "LCISD Copy").

Zilinskas signed the 2014 Contract, accepting it on eBackpack's behalf. eBackpack's copy of the 2014 Contract (the "eBackpack Copy") also shows an "X" choosing "One Year (Default)" as the term of service; handwritten next to this selection is "first year of 3 automatic extensions, 2 remaining." This handwriting does not appear on the LCISD Copy. Zilinskas testified in an affidavit that he made the handwritten notations.

eBackpack sent LCISD an invoice dated July 1, 2015, for the 2015–16 school year. LCISD refused to pay the invoice. In a series of emails, LCISD maintained that it had signed a one-year contract dated February 26, 2014, while eBackpack responded that the purpose of the 2014 Contract was to extend the 2013 Contract through 2018. eBackpack also stated that it did not accept the 2014 Contract as signed by Randle, instead making the handwritten changes that appeared on the eBackpack Copy. eBackpack argued that as a result, the parties never agreed to the 2014 Contract's terms; the 2013 Contract remained in force; and payment for the remaining two years was due. LCISD, in turn, argued that under the 2013 Contract's Terms and Conditions, Randle's signature on the 2014 Contract served as notice of cancellation or non-renewal of the 2013 Contract. David Jacobson, LCISD's Chief Technology Information Officer, also informed eBackpack that by signing the 2014 Contract, "[o]ur intention was to utilize eBackpack through the 2014–15 school year and not beyond." It is undisputed that LCISD paid eBackpack for its services through the end of the 2014–15 school year.

eBackpack filed this lawsuit on November 2, 2015, alleging breach of the 2013 Contract and seeking $99,600.00 in damages for the 2015–16 and 2016–17 school years. LCISD filed a plea

to the jurisdiction alleging its immunity from eBackpack's suit. In response, eBackpack presented evidence that it sent the 2014 Contract to LCISD "in an effort to be helpful" and to assist LCISD "in their E-Rate funding applications," as Zilinskas testified in an affidavit, not to "offer a new term of service in 2014." After a hearing, the trial court explained in a preliminary letter ruling that eBackpack's evidence created a fact question on whether the parties intended a novation. Accordingly, the trial court signed an order denying LCISD's plea. This interlocutory appeal followed.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of the action. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex. 1999). Whether a trial court has subject matter jurisdiction is a question of law. *Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 185 (Tex. App.—Dallas 2012, pet. denied). We review the trial court's ruling on a plea to the jurisdiction de novo. *Id.* (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). The plaintiff has the burden to allege facts affirmatively demonstrating the trial court has subject matter jurisdiction. *Benefit Realty Corp. v. City of Carrollton*, 141 S.W.3d 346, 348 (Tex. App.—Dallas 2004, pet. denied). We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Id.*

When a plea to the jurisdiction challenges the existence of jurisdictional facts, as is the case here, the court considers the relevant evidence submitted by the parties to resolve the jurisdictional issues. *Mullins*, 357 S.W.3d at 185. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the court may rule on the plea to the jurisdiction as a matter of law. *Id.* But if the evidence creates a fact question regarding the jurisdictional issue, then the trial

court cannot grant the plea to the jurisdiction, and the fact question will be resolved by the fact finder. *Miranda*, 133 S.W.3d at 227–28.

**ISSUES**

In two issues, LCISD contends the trial court's denial of its plea to the jurisdiction was error. First, LCISD argues that the jurisdictional evidence conclusively establishes its immunity from eBackpack's breach of contract claim. Second, LCISD argues that it is immune from any equity-based claims asserted by eBackpack. eBackpack responds that because the 2014 Contract was not an enforceable contract between the parties, the 2013 Contract remained in force, and eBackpack may recover for its breach without asserting any equity-based claims.

**APPLICABLE LAW**

**1. Governmental immunity**

In general, school districts such as LCISD are immune from suit and liability unless the legislature expressly waives governmental immunity. *Mullins*, 357 S.W.3d at 185. But a public school district that is authorized by statute or the constitution to enter into a contract, and enters into a contract, waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to certain terms and conditions. TEX. LOC. GOV'T CODE ANN. §§ 271.151(3)(B); 271.152 (West 2016) (Local Government Contract Claims Act (the "Act")).[2] A successful claimant's recovery is limited to the balance due and owed by the local governmental entity under the contract, plus attorney's fees and interest. ACT § 271.153(a); *Lubbock Cty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 304 (Tex. 2014). With certain exceptions not applicable here, damages may not include consequential or exemplary damages. ACT § 271.153(b).

---

[2] Title 8, Subtitle C, Chapter 271, Subchapter I, sections 271.151–160 of the Local Government Code are known as the "Local Government Contract Claims Act." *Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cty.*, 449 S.W.3d 98, 101 & n.1 (Tex. 2014); *TXU Energy Retail Co. L.L.C. v. Fort Bend Indep. Sch. Dist.*, 472 S.W.3d 462, 463 (Tex. App.—Dallas 2015, no pet.).

Section 271.151(2)(A) defines a "contract subject to this subchapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the local government entity that is properly executed on behalf of the governmental entity." ACT § 271.151(2)(A). Courts have characterized "essential terms" to include "'the time of performance, the price to be paid . . . [and] the service to be rendered.'" *LTTS Charter School, Inc. v. Palasota*, 362 S.W.3d 202, 210 (Tex. App.—Dallas 2012, no pet.) (quoting *City of Houston v. Williams*, 353 S.W.3d 128, 138–39 (Tex. 2011)). "Any written, authorized contract that states the essential terms of an agreement for providing services to the governmental entity triggers the waiver of immunity under chapter 271." *Lubbock Cty. Water Control*, 442 S.W.3d at 302.

Section 271.152's waiver of immunity "does not apply to extra contractual claims such as quantum meruit." *Dallas Cty. Hosp. Dist. v. Hospira Worldwide, Inc.*, 400 S.W.3d 182, 187 (Tex. App.—Dallas 2013, no pet.). And courts "have consistently refused to recognize a waiver-by-conduct exception in breach of contract suits against governmental entities." *TXU Energy Retail Co. L.L.C. v. Fort Bend Indep. Sch. Dist.*, 472 S.W.3d 462, 467 (Tex. App.—Dallas 2015, no pet.) (citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011)).

**2. Novation and contract interpretation**

The trial court's letter ruling on LCISD's plea to the jurisdiction stated, "it is my understanding that the question of jurisdiction or lack thereof based on [governmental] immunity, depends on whether the 2014 contract created a 'novation' of the 2013 contract." Novation, or the substitution of a new agreement in place of an existing agreement between the same parties, is an affirmative defense to a claim for breach of contract. *Fulcrum Cent. v. Auto Tester, Inc.*, 102 S.W.3d 274, 277 (Tex. App.—Dallas 2003, no pet.). A novation occurs "if a contract evidences an intention to relinquish and extinguish pre-existing claims and rights of action." *Id.* In lieu of the old obligation, a party accepts the promise of performance of the new obligation instead of the

performance itself. *Id.* The novation contract discharges the original obligation and only the new obligation may be enforced. *Id.*

The essential elements of a novation are: (1) a previous, valid obligation; (2) an agreement of the parties to accept a new contract; (3) the extinguishment of the previous obligation; and (4) the validity of the new agreement. *Id.* The party urging novation as a defense bears the burden of proof. *Savitch v. Sw. Bell Yellow Pages, Inc.*, No. 2-04-257-CV, 2005 WL 1839092, at *3 (Tex. App.—Fort Worth Aug. 4, 2005, no pet.) (mem. op.).

Generally, we determine intent of the parties to a contract by examining the contract's language. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument."). Similarly, "under chapter 271, the terms of the written agreement are themselves the substance that determines whether immunity is waived." *Lubbock Cty. Water Control*, 442 S.W.3d at 304. Parol evidence of the parties' subjective intent is admissible only if the language of the contract is ambiguous. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996) (per curiam). A party's "present interpretation" of a contract or other parol evidence is not admissible to create an ambiguity or to vary or contradict a contract's express terms. *Jacobson v. DP Partners Ltd. P'ship*, 245 S.W.3d 102, 106–07 (Tex. App.—Dallas 2008, no pet.) (quoting *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.)). "[O]ne party cannot unilaterally modify the terms of the original contract." *Va. Power Energy Mktg., Inc. v. Apache Corp.*, 297 S.W.3d 397, 403 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (internal quotation omitted). A valid contract modification must include a meeting of the minds supported by consideration. *White v. Harrison*, 390 S.W.3d 666, 674 (Tex. App.—Dallas 2012, no pet.). The construction of an unambiguous contract is a question of law for the court. *Calpine Producer Servs., L.P.*, 169 S.W.3d at 787.

## DISCUSSION

The parties agree that the first element of LCISD's novation defense, a previous, valid obligation, *see Fulcrum Cent.*, 102 S.W.3d at 277, is satisfied by the 2013 Contract. eBackpack disputes the remaining three elements. *See id.*

LCISD offered evidence that (1) the parties entered into the 2013 Contract and commenced performance under it; (2) eBackpack sent the 2014 Contract to LCISD; (3) LCISD signed the 2014 Contract and sent it back to eBackpack; (4) the 2014 Contract's terms were different from the 2013 Contract's terms for price, duration, and quantity; (5) in the 2014 Contract, the parties expressly agreed to be bound by "the eBackpack Terms of Service"; (6) the eBackpack Terms of Service provided that "[r]eceipt by eBackpack of emails or other written correspondence from you indicating your approval of an eBackpack proposal . . . shall constitute written acceptance of the eBackpack proposal and serves as your binding agreement to the terms set forth in such proposal";[3] (7) eBackpack's handwritten changes to the terms of the 2014 Contract did not occur until after LCISD had given its "written acceptance" and its "binding agreement" to the 2014 Contract under eBackpack's Terms of Service; and (8) LCISD did not execute or agree to eBackpack's handwritten modifications to the 2014 Contract.

eBackpack responds that the 2013 Contract remained in effect because the parties "evidenced no intent to replace it in 2014," the terms of the 2013 Contract and the 2014 Contract "are identical in every meaningful way," and because the parties did not mutually agree to new contract terms for 2014. eBackpack argues that the two contracts are for the same services. The price for those services is the same, $49,800.00 per year. The 2013 Contract was for a one-year

---

[3] eBackpack argues that these terms and conditions may not have been applicable to the 2014 Contract, because the terms and conditions attached to LCISD's affidavit in support of its plea to the jurisdiction are dated March 19, 2015. Although eBackpack's counsel argued at the initial hearing on LCISD's plea that the terms and conditions were submitted without an affidavit in proper form, eBackpack did not obtain a ruling on this objection in the trial court, and consequently waived it. *See City of Dallas v. Papierski*, No. 05-17-00157-CV, 2017 WL 4349174, at *2–3 (Tex. App.—Dallas Oct. 2, 2017, no pet.) (mem. op.) (on plea to jurisdiction, party must object and obtain a ruling to preserve objection to form of evidence on appeal).

term with three automatic extensions at market price, while the eBackpack Copy of the 2014 Contract bore handwritten notations that its term was one year with three automatic extensions, of which two extensions remained. The 2013 Contract provided for 26,000 users and the 2014 Contract for 23,000, but eBackpack argues that "it is not as if eBackpack is shipping 23- or 26,000 widgets to LCISD," but rather is providing internet services for an entire school district. eBackpack argues that the lack of evidence to explain the significance of the changes made in the 2014 Contract "suggests that the parties did not intend a novation." eBackpack also contends there is no evidence that the 2013 Contract was extinguished, because the 2014 Contract had the same terms, and there is no evidence of any discussion between the parties about changing the 2013 Contract's terms. But eBackpack also argues that the 2014 Contract was not binding because there was no mutual agreement to eBackpack's handwritten terms.

We determine the parties' intent by examining the contracts' terms, not by consideration of extrinsic evidence. *See Lubbock Cty. Water Control*, 442 S.W.3d at 304; *Friendswood Dev. Co.*, 926 S.W.2d at 283. On its first page, as we have noted, the 2014 Contract is entitled "E-Rate Proposal for Lamar Consolidated ISD." But the third page, on which the signature block appears, is entitled "E-Rate Web Hosting Agreement (eBackpack Contract Award Letter)." The 2014 Contract expressly provided,

> This letter contract is an Order to Purchase eBackpack services as specified in the attached quotation. Customer agrees that services are provided on an annual basis beginning July 1 and that full payment is due at the beginning of the period. Customer and eBackpack agree to be bound by the eBackpack Terms of Service available at [web address] which are hereby incorporated into this contract. It is understood and agreed that all sales are final with no refunds, cancellations, or proration.

As discussed, the term of the 2014 Contract was "One Year (Default)," to commence on July 1, 2014. The number of users was 23,000. The price for that year was $49,800.00, and in contrast to the 2013 Contract, no pricing was given for "automatic annual extensions." eBackpack could not

unilaterally alter this provision through Zilinskas's handwritten notations made after LCISD's acceptance of the contract. *See Va. Power Energy Mktg., Inc.*, 297 S.W.3d at 403; *White*, 390 S.W.3d at 674.

eBackpack submitted the 2014 Contract to LCISD, and LCISD signed and returned it. Under terms and conditions that eBackpack drafted and expressly incorporated into both contracts, LCISD's signature and return of the 2014 Contract constituted LCISD's written acceptance and binding agreement to the 2014 Contract's terms. Consequently, we conclude that the evidence in the record establishes that there was an agreement of the parties to accept a new contract and that eBackpack has failed to raise a fact question regarding that agreement. *See Fulcrum Cent.*, 102 S.W.3d at 277.

We also conclude that the evidence in the record establishes that the 2014 Contract was valid, and that eBackpack has failed to raise a fact question on that issue. To form a valid contract, there must be (1) an offer, (2) acceptance in strict compliance with the offer's terms, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 140–41 (Tex. App.—Dallas 2012, no pet.). "The determination of a meeting of the minds is based on the objective standard of what the parties said and did, not on their subjective states of mind." *Love v. Harrison*, No. 14-16-00632-CV, 2017 WL 3567868, at *6 (Tex. App.—Houston [14th Dist.] Aug. 17, 2017, no pet.) (mem. op.). eBackpack drafted and sent the 2014 Contract to LCISD. LCISD signed the 2014 Contract without making any changes to the contract's terms. LCISD returned the signed contract to eBackpack. Under the express terms of the 2014 Contract, these actions by LCISD constituted its written acceptance of the contract and its binding agreement to the contract's terms.

–10–

That eBackpack may have subjectively intended only "to be helpful" to LCISD "in [its] E-Rate funding applications," and not to "offer a new term of service in 2014," is in conflict with "what [eBackpack] said and did" in the 2014 Contract itself. *See id.* eBackpack also argues that LCISD's  failure to engage in the competitive procurement process to obtain approval for a new contract in 2014 supports an inference that LCISD did not intend to enter into a new contract. eBackpack relies on Zilinskas's affidavit testimony about LCISD's actions and inactions in obtaining required approvals in 2014 to support this argument. But extrinsic evidence may not be used to show that the parties "'probably meant, or could have meant, something other than what their agreement stated.'" *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017) (quoting *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011)). Nor may eBackpack rely on this evidence to argue that LCISD waived its immunity by its conduct. We "have consistently refused to recognize a waiver-by-conduct exception in breach of contract suits against governmental entities." *TXU Energy Retail Co.*, 472 S.W.3d at 467.  There is nothing in the 2014 Contract to indicate that it was not a new offer to provide web hosting services to LCISD in the 2014–15 school year that could be accepted by signing and returning the contract to eBackpack. We conclude that LCISD established the validity of the 2014 Contract. *See Fulcrum Cent.*, 102 S.W.3d at 277.

LCISD also established that the 2013 Contract was extinguished. "'The substitution of a new agreement occurs when a later agreement is so inconsistent with a former agreement that the two cannot subsist together.'" *Fulcrum Cent.*, 102 S.W.3d at 277 (quoting *Scalise v. McCallum*, 700 S.W.2d 682, 684 (Tex. App.—Dallas 1985, writ ref'd n.r.e.)).  Although as eBackpack argues, the services to be provided in the two contracts were the same, and the one-year pricing was the same, the 2013 Contract required LCISD to pay an additional $99,600.00 in consideration and

extended both parties' contractual commitments for an additional two years. The two agreements could not "subsist together." *See id.*

Under the express terms of the 2014 Contract, LCISD waived its immunity for its obligations between July 1, 2014 and June 30, 2015. *See* ACT § 271.152. But LCISD also met its burden to prove that the parties agreed to a novation, establishing its immunity from suit to the claims asserted in eBackpack's operative petition to recover $99,600.00 for the 2015–16 and 2016–17 school years. The extrinsic evidence offered by eBackpack of the parties' subjective intent was not admissible because the 2014 Contract was not ambiguous. *See Jacobson*, 245 S.W.3d at 106–07. Nor was the evidence admissible to vary the 2014 Contract's express terms. *Id.* The construction of the 2014 Contract presented a question of law. *See Calpine Producer Servs.*, 169 S.W.3d at 787. Consequently, we conclude that the trial court erred by ruling that there was a fact question on the jurisdictional issue for the finder of fact to resolve. *See Miranda*, 133 S.W.3d at 227–28.

## CONCLUSION

We sustain LCISD's issues. We reverse the trial court's order and render judgment dismissing eBackpack's suit.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

171444F.P05

–12–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

LAMAR CONSOLIDATED
INDEPENDENT SCHOOL DISTRICT,
Appellant

No. 05-17-01444-CV     V.

EBACKPACK, INC., Appellee

On Appeal from the 382nd Judicial District
Court, Rockwall County, Texas
Trial Court Cause No. 1-15-1071.
Opinion delivered by Justice Lang-Miers;
Justices Stoddart and Boatright
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED**. The case is **DISMISSED** for lack of jurisdiction.

It is **ORDERED** that appellant Lamar Consolidated Independent School District recover
its costs of this appeal from appellee eBackpack, Inc.

Judgment entered this 5th day of July, 2018.